Moussa DIALLO, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

Docket No. 98–4131.

United States Court of Appeals, Second Circuit.

Argued June 6, 2000

Decided Nov. 13, 2000

Michael Dion (Ogden N. Lewis, on the brief), Davis Polk & Wardwell, New York, N.Y. for Petitioner

Diogenes P. Kekatos, Assistant United States Attorney (Mary Jo White, United States Attorney, James A. O'Brien III, Special Assistant United States Attorney, Gideon A. Schor, Assistant United States Attorney, on the brief), Southern District of New York, New York, N.Y. for Respondent

Steven J. Kolleeny (Jennifer A. Ferrante, Eleanor Acer, of counsel, on the brief) for Amicus Curiae The Lawyers Committee for Human Rights

Before: WALKER, Chief Judge, MESKILL, Circuit Judge, and HADEN,* District Judge.

JOHN M. WALKER, JR., Chief Judge:

■ Moussa Diallo petitions for review of the March 13, 1998 order of the Board of Immigration Appeals ("BIA") dismissing his appeal from the denial by an immigration judge ("IJ") of his applications for asylum in the United States and withholding of deportation to Mauritania.[1] Specifi-

---

* The Honorable Charles H. Haden II, Chief Judge of the United States District Court for the Southern District of West Virginia, sitting by designation.

1. We note that Diallo's appeal is properly before this court. He petitions pursuant to former section 106(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a(a), which was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, § 306(b), 110 Stat. 3009–546, 3009–612. Because Diallo's deportation proceedings began before April 1, 1997 and his order of deportation became final after October 30, 1996, this case is governed by IIRIRA's transitional provisions. See Henderson v. INS, 157 F.3d 106, 117 (2d Cir.1998). Under these provisions, the federal courts plainly have the authority to review final orders of deportation. See 8

cally, Diallo argues that the BIA erred by requiring him to corroborate his allegedly credible testimony with specific documentary support and then determining, based on his failure to provide this corroboration, that he had failed to meet his burden of proof. In opposition, respondent Immigration and Naturalization Service ("INS") contends that the BIA applied the proper standard in assessing Diallo's claims and that substantial evidence supports the BIA's ultimate decision to deny his applications.

For the reasons that follow, we conclude that the BIA has articulated an appropriate standard concerning corroboration in asylum and withholding of deportation cases but that it erred in several fundamental ways in applying that standard to the facts of this case. Therefore, we grant the petition for review, vacate the BIA's order, and remand with specific guidance as to how the BIA should approach questions of credibility and corroboration to avoid repeating these errors on remand here and in subsequent cases.

## BACKGROUND

In February 1994, Diallo illegally entered the United States. In October 1995, he applied for asylum and withholding of deportation under former sections 208 and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) (amended 1996), 1253(h) (repealed 1996),[2] based on his past persecution and fear of future race-based persecution in his native country of Mauritania. In December 1995, the INS charged Diallo with unlawful entry without inspection and referred him to the immigration courts for a hearing.

At his June 1996 deportation hearing, Diallo put before the IJ materials from various sources, including the State Department. According to these materials,

the white-dominated government of Mauritania engaged in massive human rights abuses against its black citizens between 1989 and 1992. The government expelled about 70,000 blacks from the country—claiming in many cases that they were Senegalese—and forced many of them into refugee camps in neighboring Senegal. Frequently, the deportations were preceded by destruction of proof of citizenship and expropriation of property, and often accompanied by mass arrests, torture, and executions.

In addition to introducing the above materials in support of his applications, Diallo testified at the hearing. He described the conditions in Mauritania and his own experience in considerable detail. Specifically, he testified that he lived with his wife, parents, and siblings in Nouadhibou until June 1990, when several soldiers came to their home, tore up their identity papers, and forced the other members of his family to cross the nearby river into Senegal. Diallo alone was taken to a nearby village within Mauritania, where he was held prisoner along with other blacks and "half-blacks." During this time, Diallo was repeatedly beaten and tortured and was required to perform forced labor. In December 1991, Diallo was taken halfway across the Senegal River by boat where he was thrown into the water and ordered to swim to the other side. A Senegalese fisherman rescued him and took him to the Senegalese shore. Diallo then walked to the United Nations refugee camp in Horefode, Senegal, where he was reunited with his family members and wife and remained until November 1993. After hearing reports that Senegal was sending refugees back to Mauritania, Diallo moved to Dakar, Senegal's capital, where he stayed for a short time earning money before traveling to the United States by boat.

U.S.C. § 1105a(a) (repealed 1996); IIRIRA § 309(c)(1)(B), 110 Stat. at 3009–625 ("proceedings (including judicial review thereof) shall continue to be conducted without regard to [the] amendments").

2. Comparable relief remains available under the current immigration regime. *See* 8 U.S.C. §§ 1158 (asylum), 1231(b)(3) (withholding of removal).

On July 24, 1996, the IJ denied Diallo's applications. She found that, despite providing substantial independent evidence about the persecution of black Mauritanians during the period that he claimed persecution, Diallo had failed to meet his burden of proof because he did not produce adequate documentary corroboration of his testimony. According to the IJ, his "inability or unwillingness to provide supporting documentation ... seriously undermine[s] the plausibility of his account, particularly since he has not offered ... specific, credible detail about the circumstances" of his detention in Mauritania or residence at the refugee camp.[3]

The BIA affirmed the IJ's decision and dismissed Diallo's appeal. *See In re M-D-,* Int. Dec. (BIA) 3339, 1998 WL 127881, 1998 BIA LEXIS 5 (Mar. 13, 1998). The BIA articulated the applicable standard that is critical to this case: while an applicant's credible testimony alone may be sufficient to meet his burden, "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided or an explanation should be given as to why such information was not presented." *Id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *7 (internal quotation marks, citations, and alterations omitted). Applying this standard, the BIA concluded that Diallo had failed to meet his burden of proof because of "the conspicuous lack of documentary evidence supporting the specifics of [his] testimony." *Id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *8. According to the BIA, it was reasonable to expect Diallo to corroborate certain elements of his story—i.e., facts that were "reasonably subject to verification"—and he failed to produce any such specific corroborating evidence. *See id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *8–10.

Two members of the BIA dissented in separate opinions. According to Chairman Schmidt, Diallo's testimony alone was enough to meet his burden of proof because it was "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of [his] alleged fear" of persecution. *Id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *12–13 (Schmidt, dissenting) (internal quotation marks omitted). Board Member Rosenberg agreed that it was unreasonable to expect documentary corroboration under these circumstances and argued that, in any event, the majority erroneously ignored Diallo's reasonable explanations for its absence. *See id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *36–38 (Rosenberg, dissenting). This appeal followed.

## DISCUSSION

 Diallo applied both for asylum and for withholding of deportation, each of which implicates a different burden of proof. In order to demonstrate eligibility for asylum, Diallo must show that he has suffered past persecution or has a well-founded fear of future persecution on the basis of race. *See Abankwah v. INS,* 185 F.3d 18, 22 (2d Cir.1999); 8 C.F.R. § 208.13(a). An alien's fear may be well-founded even if there is only a slight, though discernible, chance of persecution. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Once an applicant demonstrates eligibility for asylum, however, "the decision whether to grant a particular application is still within the discretion of the Attorney General." *Abankwah,* 185 F.3d at 22.

 Demonstrating eligibility for withholding of deportation requires carrying a higher burden: Diallo must establish a clear probability that his " 'life or freedom would be threatened in [a] country on account of' " his race. *Id.* (quoting 8

---

**3.** We note a distinction, sometimes elided by the INS, between credible testimony, in the context of which we use the term "credibili-

ty" here, and a plausible account, which might include testimony, corroborating evidence, and the like.

U.S.C. § 1253(h)(1) (1994)) (alteration in original). However, if the applicant shows that he or she suffered "persecution in the past such that his or her life or freedom was threatened," then it is presumed that his or her life or freedom would be threatened upon return "unless a preponderance of the evidence establishes that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there." 8 C.F.R. § 208.16(b)(2). Once the required showing is made, no discretion lies with the Attorney General; the application for withholding of deportation must be granted. *See Abankwah,* 185 F.3d at 22.

The BIA concluded that Diallo had failed to sustain his burden of proof with respect to either of his applications, mainly because he had presented neither specific corroborative evidence nor an adequate explanation for the absence of such evidence in addition to his detailed testimony about his experiences and general documentary evidence about conditions in his native country. We believe that the BIA employed the proper standard for evaluating whether Diallo had met his burden of proof but erred in several fundamental respects in applying that standard in this case. Below, we discuss our reasons for accepting the BIA's corroboration standard, detail the flaws in the BIA's application of that standard, and point out what we believe to be the correct approach to questions of credibility and corroboration in this context.

## I.

 In its decision, the BIA articulated the following standard concerning the need for corroboration in asylum and withholding of deportation cases:

> [W]here an alien's testimony is the only evidence available, it can suffice where [it] is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear. However, ... the

introduction of [supporting] evidence is not purely an option with the asylum applicant; rather, corroborating evidence should be presented where available.

> ... [W]here the record contains general country information, and an applicant's claim relies primarily on personal experiences not reasonably subject to verification, corroborative documentary evidence of the asylum applicant's particular experience is not required. However, ... where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided or an explanation should be given as to why such information was not presented. The absence of such corroboration can lead to a finding that an applicant has failed to meet his burden of proof.

*In re M–D–,* 1998 WL 127881, 1998 BIA LEXIS 5, at *6–7 (internal quotation marks, citations, and alterations omitted). This is an accurate statement of the standard the BIA has developed in recent decisions upon which the BIA has announced its intent to rely. *See In re S–M–J–,* Int. Dec. No. 3303, 1997 WL 80984, 1997 BIA LEXIS 3, at *5–6 (Jan. 31, 1997); *Matter of Dass,* 20 I & N Dec. 120, 124–25, 1989 WL 331876 (BIA 1989); *Matter of Mogharrabi,* 19 I & N Dec. 439, 445–46, 1987 WL 108943 (BIA 1987). While consistent, detailed, and credible testimony may be sufficient to carry the alien's burden, evidence corroborating his story, or an explanation for its absence, may be required where it would reasonably be expected.

 Pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), when reviewing a determination by the BIA, we "accord substantial deference to the [BIA's] interpretations of the statutes and regulations that it administers." *Michel v. INS,* 206 F.3d 253, 262 (2d Cir.2000). In our view, the standard developed and applied by the

BIA in its recent cases, including the case below, is consistent with INS regulations, international legal standards, and our precedent and therefore is entitled to deference from this court.

First, the INS regulations state that "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a), 208.16(b). The BIA's interpretation of these provisions is consistent with the language and purpose of the regulations. The use of the permissive term "may" implies that an applicant's credible testimony may not always satisfy the burden of proof. Moreover, the regulations were apparently drafted to ensure that lack of corroboration would not necessarily defeat an asylum claim, see *Aliens and Nationality; Asylum and Withholding of Deportation Procedures,* 52 Fed. Reg. 32,552, 32,553 (1987) (to be codified at various parts of 8 C.F.R.) (proposed Aug. 28, 1987), not to excuse the requirement of corroboration in all cases in which an applicant's testimony is credible.

Second, international standards do not conflict with the BIA's expectation of corroborating evidence in certain cases. The Handbook of the United Nations High Commissioner for Refugees ("Handbook") notes that applicants should "[m]ake an effort to support [their] statements by any available evidence and give a satisfactory explanation for any lack of evidence." Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* ¶ 205(ii) (Geneva 1992). The Handbook, however, also recognizes that applicants "may not be able to support [their] statements by documentary or other proof" and thus should "be given the benefit of the doubt" where their "account appears credible." *Id.* ¶ 196. The standard applied by the BIA adheres to these general parameters, which the BIA has explicitly cited and relied upon. *See,* *e.g., In re S–M–J–,* 1997 WL 80984, 1997 BIA LEXIS 3, at *7–9.

Third, the standard applied by the BIA is consistent with our precedent. Although we have used language that could be interpreted more broadly, see *Abankwah,* 185 F.3d at 24 ("INS regulations do not require that credible testimony—that which is consistent and specific—be corroborated by objective evidence."); *Sotelo–Aquije v. Slattery,* 17 F.3d 33, 36 n. 2 (2d Cir.1994) ("corroboration is not required under INS rules"); *Melendez v. United States Dep't of Justice,* 926 F.2d 211, 215 (2d Cir.1991) (absent "documentary proof, the applicant's testimony will be enough if it is credible, persuasive, and refers to specific facts" demonstrating a well-founded fear of persecution), these cases establish simply that corroboration is not always required where the applicant's testimony is credible and detailed, not that corroboration can never be required under these circumstances. We have stopped short of a blanket holding that credible testimony is automatically sufficient and renders corroborating evidence unnecessary—the prevailing standard in the Ninth Circuit, see *Cordon–Garcia v. INS,* 204 F.3d 985, 992 (9th Cir.2000)—a rule that would run contrary to the permissive language of the applicable INS regulations.

Accordingly, the petitioner and the amicus overstate the breadth of the regulations, international standards, and our precedent when they claim, without elaboration of the circumstances when it is so, that an alien's credible testimony *is* sufficient to meet his or her burden of proof. Rather, the appropriate formulation is that credible testimony *may* be enough, depending on the circumstances.

## II.

Nevertheless, several fatal flaws in the BIA's application of this standard to the facts of this case undermine its ultimate decision and require vacatur and remand.

We review the factual findings underlying the BIA's determination that an alien has failed to sustain his or her burden of proof to qualify for asylum or withholding of deportation under the substantial evidence standard. *See Melgar de Torres v. Reno*, 191 F.3d 307, 312 (2d Cir.1999). Such findings must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (repealed 1996). We reverse only if no reasonable fact-finder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner's burden. *See Melgar de Torres*, 191 F.3d at 313.

By contrast, when review involves mixed questions of law and fact, the standard of review is far less deferential. Thus, when the situation presented is the BIA's application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes, "our review of the BIA's asylum and withholding of deportation determinations is *de novo.*" *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995).

We see no reason to question any of the BIA's factual determinations here. Upon *de novo* review of the BIA's application of its corroboration standard in this case, however, we conclude that its decision cannot be sustained because the BIA failed to: (1) rule explicitly on the credibility of Diallo's testimony; (2) explain why it was reasonable in this case to expect additional corroboration; or (3) assess the sufficiency of Diallo's explanations for the absence of corroborating evidence. We elaborate on each of these below.

## A.

First, the BIA made no pronouncement on the credibility of Diallo's underlying testimony or of his explanations for the lack of additional corroborating evidence. It is "well established" that the BIA at-taches "significant weight to the credibility of an asylum applicant." *In re O–D–*, Int. Dec. No. 3334, 1998 WL 24904, 1998 BIA LEXIS 36, at *5 (Jan. 8, 1998). As noted above, the precedent of the BIA and of this court would sustain a petition for asylum or withholding of deportation based on credible testimony alone or, by extension, credible testimony combined with convincing explanations for lack of corroboration. The BIA's failure to make a credibility assessment may have denied Diallo the potential benefit of this rule below and frustrates appellate review on this question.

The government argues that the BIA made a supportable adverse credibility finding here. We disagree. To be sure, the IJ found that Diallo's failure to provide corroborative evidence "seriously undermine[s] the plausibility of his account, particularly since he has not offered ... specific, credible detail about" his experiences. The BIA noted and did not disturb the IJ's finding. *See In re M–D–*, 1998 WL 127881, 1998 BIA LEXIS 5, at *4–5.

But this finding does not withstand even deferential review. On the record before us, we think the IJ was plainly in error to find that Diallo failed to provide "specific, credible detail" in his testimony. Moreover, we agree with the petitioner that it is inappropriate to base a credibility determination solely on the failure to provide corroborative evidence. The presence or absence of corroboration may properly be considered in determining credibility. *Cf. Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.1988) (noting that corroboration may bolster credibility). However, corroboration cannot be the only factor taken into account because this would effectively require corroboration in all cases, contrary to explicit provisions in the law that applicants may be able to rely exclusively on their testimony. As the BIA has correctly observed, "[a] failure of proof is not a proper ground *per se* for an adverse credibility determination. The latter finding is more appropriately based

upon inconsistent statements, contradictory evidence, and inherently improbable testimony." *In re S–M–J–*, 1997 WL 80984, 1997 BIA LEXIS 3, at \*23–24.

At the same time, we cannot agree with the petitioner that the BIA implicitly found his testimony credible or that its failure to make a negative assessment amounts to a finding of credibility. There are certain inconsistencies in Diallo's story that give us pause. First, his application for asylum lists Niabina as his place of birth and residence, whereas in his testimony he stated that he was born and resided in Nouadhibou. His testimony also implies that he lived near the Senegal River, whereas Nouadhibou is a port city about 400 miles from the River and nowhere near the border with Senegal. Second, his application lists December 1989 as the date of his arrest, but he testified that soldiers came to his house and arrested him in June 1990. Third, there are other inconsistencies concerning the amount of time he spent both in prison and in the refugee camp.

▪ Where an applicant's testimony is generally consistent, rational, and believable, disparities like the ones listed above need not be fatal to credibility, especially if the errors are relatively minor and isolated, *see In re A–S–*, Int. Dec. No. 3336, 1998 WL 99553, 1998 BIA LEXIS 7, at \*10–11 (Feb. 19, 1998) (numerous date inconsistencies may support adverse credibility finding), and do not concern material facts, *see Ceballos–Castillo v. INS*, 904 F.2d 519, 520 (9th Cir.1990) (distinguishing "incidental" misstatements from those that go to "the heart of the asylum claim"). But this is an assessment that the IJ and then the BIA should make in the first instance. *See Kokkinis v. District Dir. of INS*, 429 F.2d 938, 942 (2d Cir.1970) ("It is not for this court to pass upon the credibility of a witness . . . .").

### B.

Second, we are not convinced that, under the BIA's own precedent, it was reasonable to expect additional corroboration beyond the materials supplied by Diallo. Corroboration in this context typically includes both evidence of general country conditions and evidence that substantiates the applicant's particular claims. *See, e.g., In re S–M–J–*, 1997 WL 80984, 1997 BIA LEXIS 3, at \*5–11. The BIA has repeatedly emphasized the importance of providing background evidence concerning general country conditions, especially where it tends to confirm the specific details of the applicant's personal experience. *See id.* 1997 WL 80984, 1997 BIA LEXIS 3, at \*5–7; *Matter of Dass*, 20 I & N Dec. at 124–25; *Matter of Mogharrabi*, 19 I & N Dec. at 446. In this case, as the BIA acknowledged, Diallo provided such evidence: he "submitted numerous articles and reports regarding general country conditions in Mauritania and the oppression of black Mauritanians on account of their race." *In re M–D–*, 1998 WL 127881, 1998 BIA LEXIS 5, at \*8. Moreover, Diallo's description of his personal experiences closely parallels the patterns of persecution in Mauritania chronicled in these sources, which included reports prepared by the State Department, Amnesty International, and Human Rights Watch.

▪ Corroboration of the specifics of an applicant's personal experiences may also be reasonably expected, but only under certain circumstances. According to the BIA, specific documentary corroboration is required only for

> material facts which are central to [the applicant's] claim and easily subject to verification, such as evidence of his or her place of birth, media accounts of large demonstrations, evidence of a publicly held office, or documentation of medical treatment. If the applicant does not provide such information, an explanation should be given. . . .

*In re S–M–J–*, 1997 WL 80984, 1997 BIA LEXIS 3, at \*9. Applicants must supply supporting documentation only if it "is of the type that would normally be created or

available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Id.* 1997 WL 80984, 1997 BIA LEXIS 3, at *11. Given these standards, it is unclear to us why Diallo's claim failed for lack of specific corroboration.

As an initial matter, Diallo plainly provided substantial corroboration of the specifics of his story. Although Diallo was functionally illiterate, on cross-examination he was able to describe the Mauritanian flag accurately and indicate basic knowledge of ethnic groups and tensions in Mauritania, thereby corroborating his claim of Mauritanian citizenship. He also displayed the scars he allegedly received at the hands of prison guards.

Nevertheless, the BIA listed four forms of additional corroboration that, in its view, Diallo should reasonably have been able to provide: (1) proof of his Mauritanian citizenship; (2) letters or affidavits from his sister, who lives in Senegal outside the refugee camp and has been in contact with Diallo since he arrived in the United States; (3) letters or affidavits from other family members to corroborate his claim that he was arrested and detained by the authorities while his family was expelled from Mauritania; and (4) confirmation of his or his family's presence or registration at the refugee camp in Senegal. *See In re M–D–*, 1998 WL 127881, 1998 BIA LEXIS 5, at *4.

But the BIA did not explain why it was reasonable to expect provision of such materials under its own standards. Most importantly, we do not see how these materials were easily accessible to Diallo, given his functional illiteracy, the circumstances of his departure—which were not conducive to the calm assembly and preservation of documents to be used in future asylum proceedings, *see Senathirajah v. INS,* 157 F.3d 210, 215–16 (3d Cir.1998)—and his explanations for not supplying the requested documents, to which we now turn.

### C.

Third, the BIA did not assess Diallo's explanations for his failure to produce the requested corroborative evidence, but limited its analysis simply to the fact that the failure had occurred. *See id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *8–10. Accordingly, we do not know whether the BIA (or the IJ) credited Diallo's explanations, which, at least facially, appear reasonable. Specifically, Diallo explained on the record that: (1) his identity papers were destroyed by the soldiers who arrested him, and the Mauritanian government has generally refused to issue any new citizenship papers to black citizens; (2) although he speaks with his sister by telephone, he has received only one hand-delivered letter from her since he arrived in the United States; (3) he has not been able to communicate directly with his family at the refugee camp since he left Senegal; and (4) his inability to corroborate his presence at the refugee camp is due to the fact that he lost the identity card issued by the camp at some point either during his stay in Dakar or his travels to and within the United States. In addition, the BIA was aware that the inability of the United Nations High Commissioner for Refugees ("UNHCR") to confirm Diallo's or his family's presence at the refugee camp might not be a reliable indicator because the UNHCR has specifically warned that its verification procedures in Senegal are seriously flawed. *See id.* 1998 WL 127881, 1998 BIA LEXIS 5, at *41–45.

The BIA only casually acknowledged the UNHCR's general explanation and, more importantly, wholly failed to acknowledge Diallo's own particular explanations for his inability to provide further corroboration. The BIA's failure to address Diallo's explanations violates both the letter and spirit of its own standard, which specifically provides that, even under circumstances where corroboration may reasonably be expected, petitioners may meet their burden of proof by offering a believable and sufficient explanation as to why such cor-

roborating evidence was not presented. *See In re M–D–*, 1998 WL 127881, 1998 BIA LEXIS 5, at *7.

### III.

In practice, the BIA's standard requires a twofold determination. First, the agency must determine whether the applicant's testimony is credible. In making this determination, the presence of corroborating evidence may be relevant. Second, the agency must determine whether the applicant has met his or her burden of proof. Here, too, corroborating evidence (or an explanation for its absence) may be required if it would reasonably be expected, even where the applicant's testimony is credible. In this case, in the absence of an explicit credibility finding, an explanation of the need for additional corroboration, and an assessment of Diallo's reasons for his failure to produce further corroboration, we conclude that the BIA's ultimate ruling cannot stand. Therefore, we vacate and remand with the following instructions to the BIA, which may, in turn, remand to the IJ to make any of the required findings in the first instance.

▆ First, the BIA should decide explicitly whether or not Diallo's testimony was credible. This determination may properly be based on a credibility finding by the IJ, should the BIA choose to remand to allow the IJ to make such a finding. *Cf. In re A–S–*, 1998 WL 99553, 1998 BIA LEXIS 7, at *8 ("[B]ecause the Immigration Judge has the advantage of observing the alien as the alien testifies, the Board accords deference to the Immigration Judge's findings concerning credibility and credibility-related issues."). In making their determinations, the IJ and the BIA should consider the underlying consistency and plausibility of Diallo's story, the extent to which it was corroborated, and the believability of the explanations Diallo offered for failing to provide further corroboration. We remind the IJ and the BIA that Diallo's simple failure to produce any particular documentary support cannot serve as the sole basis of an adverse credibility finding. While corroboration may bolster credibility, an applicant may still be credible absent specific corroboration, especially where his or her explanations for the absence of corroboration are themselves credible.

Second, if the BIA finds that Diallo's testimony was credible, it should decide whether additional corroboration is nonetheless required to meet his burden of proof. If the BIA insists on further corroboration, it should explain specifically, either in its decision or otherwise in the record: (1) why it is reasonable under the BIA's standards to expect such corroboration; and (2) why Diallo's proffered explanations for the lack of such corroboration are insufficient.

### CONCLUSION

For the foregoing reasons, we conclude that: (1) the BIA's corroboration standard is consistent with INS regulations, international standards, and the precedent of this court and is therefore entitled to deference; but (2) the BIA erred in several fundamental respects in applying that standard to the facts of this case. Accordingly, we grant the petition for review, vacate the BIA's order, and remand for further proceedings consistent with this opinion.