**ZHENG Shou Zheng, Petitioner,**

v.

**John ASHCROFT, Respondent.**

**No. 02–4228.**

United States Court of Appeals, Second Circuit.

Sept. 8, 2003.

of New York, sitting by designation.

Vlad A. Kuzmin, Wilson, Joshi & Kuzmin, LLP, New York, NY, for Petitioner.

Michael R. Holden, Assistant United States Attorney, Southern District of New York (Kathy S. Marks and Meredith E. Kotler, Assistant United States Attorneys, of counsel; James B. Comey, United States Attorney, on the brief), New York, NY, for Respondent.

PRESENT: MINER, STRAUB, and WESLEY, Circuit Judges.

## SUMMARY ORDER

Zheng Shou Zheng ("Zheng"), a native and citizen of the People's Republic of China ("China"), petitions this Court pursuant to section 106(a) of the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. § 1105a(a) (1994), for review of a May 24, 2002 decision of the Board of Immigration Appeals ("BIA").[1] The BIA summarily affirmed the decision of the Immigration Judge ("IJ"), who found Zheng not credible, denied his application for asylum and withholding of deportation, and ordered him excluded and deported from the United States.

We generally treat an IJ's determination of credibility as a factual finding subject to the substantial evidence standard.[2] *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003); *see Alvarado–Carillo v. INS*, 251 F.3d 44, 49 (2d Cir.2001) (describing substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)). Incredibility stems from "inconsistent statements, contradictory evidence, and inherently improbable testimony." *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 152 n. 6 (2d Cir. 2003) (internal quotation marks omitted). Unlike immaterial inconsistencies, discrepancies and omissions that concern integral grounds of the asylum claim afford a sufficient basis for an adverse credibility determination. *Cf. Chen Yun Gao v. Ashcroft*,

---

1. Since proceedings were initiated against Zheng prior to April 1, 1997, and the BIA did not issue its final deportation order until after October 30, 1996, we have jurisdiction under 8 U.S.C. § 1105a(a) (1994). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208 § 309(c)(1) (1996).

2. Where the BIA summarily affirms the IJ's decision and adopts the IJ's reasoning in doing so, we review the decision of the IJ directly. *Secaida–Rosales*, 331 F.3d at 305.

299 F.3d 266, 272 (3d Cir.2002). We will reverse a decision of the IJ only where "no reasonable fact-finder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner's burden." *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000).

In this case there is ample relevant evidence to support the IJ's adverse credibility determination. First and most significantly, Zheng gave materially divergent bases for his asylum claim, alternating repeatedly between the claim that he was persecuted on account of China's birth control policy, and the assertion that he was persecuted because of his physical appearance. Second, Zheng failed to mention an integral ground of his asylum claim–that he was fired for having three children–until his exclusion hearing, and his testimony on this point was replete with internal inconsistencies. Third, the IJ noted Zheng's unresponsive and evasive behavior during the exclusion hearing–an observation supported by a review of the transcript. Last, the IJ cited the fact that Zheng returned to China while his asylum application was pending, yet had no difficulties with the Chinese officials he encountered while there. *See* 8 C.F.R. § 208.8(b) ("An applicant who leaves the United States pursuant to advance parole ... and returns to the country of claimed persecution shall be presumed to have abandoned his or her application, unless the applicant is able to establish compelling reasons for such return.").

In addition, the IJ discredited Zheng's testimony for other omissions, inconsistencies in dates, and discrepancies in the chronology of events surrounding Zheng's alleged payment of a fine to Chinese officials and Zheng's alleged beating by Chinese authorities. While these inconsistencies would be insufficient to alone support an adverse credibility determination, they are relevant to a larger credibility assessment based on the whole record. *See, e.g., Jin Shui Qiu*, 329 F.3d at 155 (assessing the "whole record" in reviewing the BIA's ruling); *Secaida–Rosales*, 331 F.3d at 308 ("[O]utright inconsistencies ... [and] omissions must be measured against the whole record before they may justify an adverse credibility determination.").

Finally, the IJ properly refused to admit certain of Zheng's documentary evidence since, in an earlier directive, the IJ clearly indicated that Zheng was to submit original copies of his evidence as soon as possible, and Zheng had not done so. *See* 8 C.F.R. § 1003.31(c) (the IJ "may set and extend time limits for the filing of applications and related documents ... If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived."); *see also* 8 C.F.R. § 287.6 (stating that official records from foreign countries must be authorized in order to be admissible for any purpose).

For the foregoing reasons, the BIA properly dismissed Zheng's appeal, and the petition for review is hereby DENIED.