**Guo Yong YANG, Petitioner,**

v.

**John ASHCROFT, Attorney General, Edward J. McElroy, District Director of the United States Immigration and Naturalization Service, Anthony Moscato, Director of the Executive Office for Immigration Review, Paul W. Schmidt, Chairman of the Board of Immigration Appeals, Respondents.**

No. 02–4701.

United States Court of Appeals, Second Circuit.

June 14, 2004.

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order of the Board of Immigration Appeals is AFFIRMED and the petition for review is DENIED.

Meer M.M. Rahman, Christophe & Associates (Charles Christophe, on the brief) New York, NY, for Petitioner.

Michael L. Tabak, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney, Sara L. Shudofsky, Assistant United States Attorney, on the brief) New York, NY, for Respondents.

PRESENT: WINTER, STRAUB, and LAY,* Circuit Judges.

### SUMMARY ORDER

Guo Yong Yang ("Yang"), a native of the People's Republic of China ("China"), petitions this Court pursuant to section 242(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b) (2000), for review of an October 10, 2002 decision of the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the decision of the Immigration Judge ("IJ"), denying

* The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Yang's application for asylum and withholding of removal, and denying him relief under Article 3 of the United Nations Convention Against Torture ("Torture Convention"), and directed Yang's removal from the United States. The IJ found Yang's testimony not credible because it was vague and contained implausibilities and inconsistencies regarding material elements of his claim. The IJ further determined that Yang had failed to demonstrate that he had been subject to past persecution, possessed a well-founded fear of future persecution, or that he would "more likely than not" be subjected to torture if he were returned to China.

Where the BIA summarily affirms the IJ's decision and adopts the IJ's reasoning in doing so, we review the decision of the IJ directly. *Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003). We generally treat an IJ's determination of credibility as a factual finding subject to the substantial evidence standard. *Id.* at 307; *see also Alvarado–Carillo v. INS,* 251 F.3d 44, 49 (2d Cir.2001) (describing substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted). A lack of credibility stems from "inconsistent statements, contradictory evidence, and inherently improbable testimony." *Qiu v. Ashcroft,* 329 F.3d 140, 152 n. 6 (2d Cir.2003) (internal quotation marks omitted). Unlike immaterial inconsistencies, discrepancies and omissions that concern integral grounds of the asylum claim afford a sufficient basis for an adverse credibility determination. *See Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). We will reverse a decision of the IJ only where "no reasonable factfinder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner's bur-

den." *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000).

Article 3 of the United Nations Convention Against Torture was implemented by the Foreign Affairs Reform and Restructuring Act of 1988, Pub.L. No. 105–277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (Oct. 21, 1998). *Wang v. Ashcroft,* 320 F.3d 130, 133 (2d Cir.2003). Article 3 precludes the United States from returning an alien to a country where he more likely than not would be tortured by, or with the acquiescence of, government officials acting under color of law. *Id.* at 133–34; 8 C.F.R. §§ 208.16(c), 208–17(a), 208.18(a) (2002). "Torture is an extreme form of cruel and inhuman treatment." 8 C.F.R. § 208.18(a)(2). "In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 208.18(a)(5). "An alien is not entitled to [relief under the Torture Convention] unless he can prove that, upon being returned to his country of origin, he is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment that either (1) is not lawfully sanctioned by that country or (2) is lawfully sanctioned by that country, but defeats the object and purpose of [the Torture Convention]." *Wang,* 320 F.3d at 134.

■ In this case there is substantial relevant evidence to support the IJ's adverse credibility determination. The IJ disbelieved Yang's story about his participation in the student demonstration in Fuzhou which precipitated his departure from China because it was predicated on a timeline of events that was implausible. According to Yang's testimony, he spoke with the brother of a friend in the morning of May 14, 1989 upon the brother's return from a demonstration in Fuzhou, twenty to thirty miles away. Yang then allegedly accompanied this friend immediately back

to Fuzhou in order to participate in a demonstration occurring at eleven a.m. that same morning. The IJ also found the story to lack credibility because "none of these facts are contained in [Yang's] statement attached to his application for asylum."

The IJ further found several inconsistencies in Yang's testimony. Yang testified that he had stayed home from school on May 14, 1989 in order to help his sick father, but also testified that he left home early in the morning of May 14 in order to participate in the demonstration in Fuzhou without informing either of his parents. Yang also testified that the police never inquired about his participation in the student demonstrations, but that later, when he was in hiding, his parents informed him that the police had come looking for him on several occasions. Finally, Yang submitted an identification card in support of his asylum application that was issued in December 1989; however, Yang testified that he left the Fujian province in January 1989 and never returned. When confronted with this inconsistency, Yang testified vaguely that the identification card was issued to a "family member" whom he failed to identify. The IJ's determination that "the respondent's testimony was halting and hesitant and he appeared to be making up facts as he went along [and therefore] failed to testify credibly" is supported by substantial evidence.

■ There is also substantial evidence to support the IJ's determination that Yang failed to demonstrate past persecution or a well-founded fear of future persecution. Yang testified that he participated minimally in one student demonstration that occurred in China over fourteen years ago. He testified at one point that the police had never pursued him for participating in the student demonstration, and at another point, that an unspecified family member informed him that the police were looking for him. He provided no corroboration for the latter vague testimony. There is no evidence in the record that Yang's decision to leave home after being dismissed from school was compelled by government action. In addition to these insufficiencies in Yang's testimony, the INS provided documentary evidence, including the Department of State's *Country Reports on Human Rights Practice—2000* on China and a detailed analysis of the 1989 democracy movement in the Fujian province, written by two Chinese-speaking American professors. These reports undermine Yang's claims of persecution. The analysis written by the American professors, in particular, portrays the treatment of student dissidents in Fujian province as quite distinct from the treatment of student demonstrators in Beijing, noting that even after the Chinese Government imposed martial law in Beijing, "Fujian officials were reluctant to take tough measures against demonstrators[.]"

For similar reasons, the IJ's determination that Yang had failed to demonstrate that it was "more likely than not" that he would be subjected to torture if he were returned to China, was supported by substantial evidence.

For the foregoing reasons, we are compelled to conclude that the BIA properly dismissed Yang's appeal. We are disturbed, however, by the less-than-zealous performance of Yang's counsel at the asylum hearing. Counsel failed to appear at Mr. Yang's July 19, 2000 hearing, was late and unprepared for the January 24, 2001 hearing, admitted at that hearing that he had "had no chance to meet with [his] client or prepare," and, called Mr. Yang as his sole witness at the August 21, 2001 hearing, but agreed to forego direct examination and allow the INS lawyer to exercise complete control over the proceedings.

Despite these failures, appellate counsel (who did not represent Yang below) failed to raise a claim of ineffective assistance of counsel before the BIA or this Court. Thus, as such claims must be heard by the BIA in the first instance, we have no basis, in fact or law, to render any conclusion as to the ineffectiveness of Yang's counsel. *See Arango–Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir.1994). The petition for review is hereby DENIED.