**Ja Bian CHEN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, John Ashcroft, Respondent.**

No. 02–4570.

United States Court of Appeals, Second Circuit.

Jan. 25, 2005.

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Kevin M. Laden, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation (Peter D. Keisler, Assistant Attorney General,

Civil Division, Linda S. Wernery, Senior Litigation Counsel, Office of Immigration Litigation, on the brief) Washington, D.C., for Respondent.

PRESENT: STRAUB, KATZMANN, Circuit Judges, and EATON,* Judge.

## SUMMARY ORDER

Ja Bian Chen ("Chen"), a native of the People's Republic of China ("China"), petitions this Court pursuant to section 242(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b), for review of a September 20, 2002 decision of the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the decision of the Immigration Judge ("IJ"), denying Chen's application for asylum and withholding of removal, and denying him relief under Article 3 of the United Nations Convention Against Torture ("Torture Convention"), and directed Chen's removal from the United States. The IJ found Chen's testimony not credible because it was "internally inconsistent" and "non-plausible" and his case "insufficiently documented." We assume the parties' familiarity with the facts, decision below, and issues on appeal.

▇▇▇ Where the BIA summarily affirms the IJ's decision and adopts the IJ's reasoning in doing so, we review the decision of the IJ directly. *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). We generally treat an IJ's determination of credibility as a factual finding subject to the substantial evidence standard. *Id.* at 307. A lack of credibility stems from "inconsistent statements, contradictory evidence, and inherently improbable testimony." *Qiu v. Ashcroft*, 329 F.3d 140, 152 n. 6 (2d Cir.2003) (internal quotation marks omitted). We will reverse a decision of the IJ only where "no reasonable fact-finder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner's burden." *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000).

In order to demonstrate eligibility for asylum, the asylum applicant bears the burden of establishing that he is unable or unwilling to return to his native country because he experienced past persecution or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Chen v. INS*, 359 F.3d 121, 126 (2d Cir.2004); 8 C.F.R. § 208.13(b). If an applicant establishes that he has suffered past persecution, he shall be presumed to have a well-founded fear of future persecution on the basis of the same claim. *Chen*, 359 F.3d at 126–27. Alternatively, an applicant can demonstrate a well-founded fear of future persecution. This showing has both a subjective and an objective component. *Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999). An applicant's credible testimony that he fears persecution can satisfy the subjective component. *Id.* Once a subjective fear is established, an applicant must present credible, specific, and detailed evidence that a reasonable person in his position would fear persecution if returned to his native country. *Id.* To determine his eligibility for withholding of deportation, an applicant bears the greater burden of establishing that his "life or freedom would be threatened in [his native country] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "[A]n inability to establish eligibility for asylum necessarily precludes ability to establish eligibility for withholding of deportation." *Chen*, 359 F.3d at 127.

---

* The Honorable Richard K. Eaton, Judge, United States Court of International Trade, sitting by designation.

Article 3 of the United Nations Convention Against Torture precludes the United States from returning an alien to a country where he more likely than not would be tortured by, or with the acquiescence of, government officials acting under color of law. *Wang v. Ashcroft*, 320 F.3d 130, 133–34 (2d Cir.2003); 8 C.F.R. §§ 208.16(c), 208.17(a), 208.18(a). "Torture is an extreme form of cruel and inhuman treatment." 8 C.F.R. § 208.18(a)(2). "In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 208.18(a)(5). "[A]n alien is not entitled to [relief under the Torture Convention] unless he can prove that, upon being returned to his country of origin, he is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment that either (1) is not lawfully sanctioned by that country or (2) is lawfully sanctioned by that country, but defeats the object and purpose of [the Torture Convention]." *Wang*, 320 F.3d at 134.

The IJ's decision in this case provides a detailed account of Chen's immigration history, his claims of persecution at the hands of officials in China charged with enforcement of state reproductive policy, and findings of fact bearing on Chen's credibility as a witness testifying on his own behalf. We find that there is substantial relevant evidence to support the IJ's adverse credibility determination, such that the granting of asylum and withholding of removal was not warranted.

■ The government argues that Chen failed to exhaust his available administrative remedies with regard to his Torture Convention claim. In support of his appeal to the BIA, Chen recited the IJ's adverse ruling on this claim and mentioned that he believed "he would be sentenced to jail due to his illegal departure" if he were returned to China, but the substance of Chen's brief to the BIA dealt only with Chen's asylum and withholding of removal claims. While it is arguable that this was insufficient to preserve the Torture Convention issue for appeal, *cf. Foster v. INS*, 376 F.3d 75, 78 (2d Cir.2004) (per curiam) ("generalized protestations" that removal was improper did not adequately alert the IJ that petitioner was arguing that his underlying conviction was not an aggravated felony so as to preserve that issue for appellate review), we find, in any event, the IJ's determination that Chen had failed to demonstrate that it was "more likely than not" that he would be subjected to torture if he were returned to China, is supported by substantial evidence.

For the foregoing reasons, we are compelled to conclude that the BIA properly denied Chen's appeal. We are disturbed, however, by certain aspects of the proceedings below, which at best, display disrespect toward the petitioner, and, at worst, reveal a preference for speed over process. During Chen's preliminary asylum hearing, the IJ remarked (obviously in jest) that his mind was "slowly, slowly deteriorating. I'm sorry to say it, especially on Wednesdays, my Master Calendar. I'm mean I forget where my keys are, I mean, it's, it's, it's dangerous." Thereafter, the IJ and both counsel for Chen and the government discussed (again, obviously in jest) the fact that the IJ would bake a cake and throw a party for Chen's attorney if the hearing were scheduled on the attorney's birthday. Most disturbing, however, is an exchange between Chen's attorney and the IJ about whether a newly hired lawyer in that attorney's office would be prepared to argue the substance of Chen's petition:

Counsel: "I don't want to send my—the new attorney to like go and do a merits hearing very quickly."

IJ: "Why not?"

Counsel: "Maybe for this case, yeah, because like most of the time you do

the question [sic], so that may not ...
This would probably be a good case
for him to start."

While that "new" attorney and the IJ acquitted themselves professionally at Chen's asylum hearing, these exchanges at the preliminary hearing did nothing to assure Chen that his rights were being protected with the care and seriousness of purpose that should characterize this country's immigration bench and bar. We recognize that immigration dockets are crowded and petitioners' claims sometimes redundant, but these realities cannot be allowed to degrade the respect due to each petitioner and his rights.

The petition for review is hereby DENIED and the order of the Board of Immigration Appeals is AFFIRMED.