**MEIZHEN WANG, Petitioner,**

v.

**Alberto GONZALES,\* United States Attorney General, Respondent.**

**No. 04–0901–ag.**

United States Court of Appeals,
Second Circuit.

May 4, 2006.

Joan Xie, New York, New York, for Petitioner.

Leslie B. McClendon, Assistant United States Attorney (Paul J. McNulty, United States Attorney, Anne–Marie K. Zell, Third Year Law Student, on the brief), Eastern District of Virginia, Alexandria, Virginia, for Respondent.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. REENA RAGGI, Circuit Judges, and Hon. MIRIAM GOLDMAN CEDARBAUM, District Judge.[1]

**SUMMARY ORDER**

Meizhen Wang petitions for review of a February 5, 2004 BIA order affirming a decision by Immigration Judge Gabriel C. Videla ("the IJ") denying Liu's application

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft.

1. The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

for asylum, withholding of removal, and relief under the U.N. Convention Against Torture ("CAT"). We assume the parties' familiarity with the facts of the case, its procedural history, and the issues on appeal.

This Court reviews the IJ's decision where, as here, the BIA summarily adopted or affirmed it without opinion. *See Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, overturning the factual finding only if any reasonable adjudicator would be compelled to conclude to the contrary. *See* 8 U.S.C. § 1252(b)(4)(B); *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 543 (2d Cir.2005).

Wang challenges the adverse credibility determination on which the denial of relief was based. The most important basis for the adverse credibility determination was the IJ's finding that Wang's failure to answer questions about the Pope and the Book of Genesis undermined her claim to have practiced Catholicism in China. This Circuit recently clarified the law governing questions about an applicant's knowledge of his or her professed religion in *Rizal v. Gonzales*, 442 F.3d 84 (2d Cir.2006), in which we stated that "[b]oth history and common sense make amply clear that people can identify with a certain religion, notwithstanding their lack of detailed knowledge about that religion's doctrinal tenets." *Id.* at 90. *Rizal* explained that questions about substantive religious knowledge are permissible only to the extent that substantial evidence in the record supports the conclusion that an applicant should be prepared to answer them.[2] *See id.*

Wang claimed to have participated in religious education, and so the IJ's questions concerning her religious knowledge would only be sustainable insofar as someone with her alleged background could have been expected to answer them. *See id.* at 90–91. However, the IJ did not merely reject Wang's claim to have participated in religious education. Rather, he concluded that "it would be unthinkable that a true Catholic ... would know so little about the Catholic faith" and that Wang "appear[ed] to be so critically unfamiliar with some of the most basic concepts of Catholicism that it's very evident that [Wang] ... was *not a practicing Catholic* in China and apparently has very little familiarity with Catholicism." (emphasis added).

In light of the significant clarification of our law set forth in *Rizal*, we remand for reconsideration of the IJ's conclusion that Wang was not a "true Catholic." Of course, the agency on remand may also address the question of whether, under the analysis set forth in *Rizal*, Wang's claim to have participated in religious education and her answers to the IJ's questions about religion were irreconcilable.

In remanding, we note that even if the IJ's questions about religion were permissible, several of the IJ's other findings were potentially problematic, and the BIA or the IJ may wish to reconsider them on remand. For example, the IJ faulted Wang for failing to mention the Pope when, following a discussion of whether

---

**2.** Thus, although "we can certainly imagine instances in which the nature of an individual applicant's account would render his lack of a certain degree of doctrinal knowledge suspect and could therefore provide substantial evidence in support of an adverse credibility finding—for instance, where an applicant claims to have been a teacher of, or expert in, the religion in question," *Rizal*, 442 F.3d at 90, "many deeply religious people know very little about the origins, doctrines, or even observances of their faith." *Id.* at 91 (quoting *Zhen Li Iao v. Gonzales*, 400 F.3d 530, 534 (7th Cir.2005)).

churches in China are required to register with the government, Wang was asked a series of questions about whether there was someone outside China who "is over your church in China" and whether anyone had authority over the head of her church in the United States. Nothing about these questions, however, indicated that they referred to the church's hierarchy as opposed to governmental regulation of the church, which is how Wang understood them.[3]

Similarly, the IJ found it implausible that the police would ask Wang questions concerning the location of her church and its leadership, because the church was large and well-established, which suggested that the police would already know about it. But the IJ did not consider whether there are other reasons to ask questions during an interrogation, e.g., to confirm information already in the possession of the police, to incriminate the individual being interrogated, or simply to intimidate.

The IJ found it implausible that Wang's mother would have been unable to find a church in New York that gave services in her dialect, Foo Chow, and consequently chosen to attend a non-Catholic church. The IJ took "administrative notice of the fact that there is at least one church, the Church of the Transfiguration, which is a Roman Catholic church in Chinatown not very far from where the respondent allegedly lives with her mother, that holds services in Foo Chow Chinese." We have serious doubts about whether substantial evidence could be said to support a finding based on "administrative notice" of a fact of this kind.[4] *Cf.* 8 C.F.R. § 1003.1(d)(3)(iv) (authorizing the BIA to take administrative notice only of "commonly known facts such as current events or the contents of official documents."). Furthermore, even if Wang's mother's attendance at a non-Catholic church was implausible, that implausibility was not obvious and therefore could not be relied upon unless Wang was given an opportunity to address it. *See Ming Shi Xue v. BIA,* 439 F.3d 111, 121 (2d Cir.2006) ("[W]here the perceived incongruities in an asylum applicant's testimony are not plainly obvious, an IJ cannot rely on them to support an adverse credibility ruling without first identifying the alleged inconsistencies for the applicant and giving the applicant an opportunity to address them.").

Finally, we note that the IJ faulted Wang for failing to produce a letter from the church she attended in the United States, although Wang was never given an opportunity to explain her failure to procure the letter.[5] *See Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000) (requiring that an IJ assess the sufficiency of a petition-

---

**3.** We also note that the IJ, in finding it implausible that a Chinese Catholic would state that Genesis "says that ... [t]he Messiah will appear," apparently assumed that Chinese Catholics read the Book of Genesis literally. At least some Catholics, however, believe that Genesis 49:10 refers to the Messiah. *See* L.W. Geddes, *Messiah,* in THE CATHOLIC ENCYCLOPEDIA, Volume X (2003), *available at* http://www.newadvent.org/cathen/10212c.htm. The IJ did not consider whether any Catholics in China have this belief, or whether Wang might have been taught this version in the course of her Bible study.

**4.** Indeed, it appears that the IJ may have been mistaken. The website for the church in question indicates that services are given in English, Cantonese and Mandarin, but apparently not Foo Chow. *See* Transfiguration Parish NYC: Mass Schedule, http://www.transfigurationnyc.org/mass_schedule (last visited April 26, 2006).

**5.** Wang was asked whether there was proof of her attendance at the church in the United States. She discussed the certificate of baptism and photographs of her baptism. No one suggested that further documentation of her attendance at the church was required.

er's explanations for failing to produce corroborating evidence).

In light of these potential flaws in the IJ's reasoning and the new opinion in *Rizal v. Gonzales*, we remand so that the agency may reconsider its earlier decision.

For the foregoing reasons, the petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED for further proceedings consistent with this order.