Sergey G. KOTYRLO, Olena A.
Kotyrlo, and Kateryna S.
Kotyrlo, Petitioners,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, Respondent.

Nos. 02–4972–ag, 02–4976–ag,
02–4978–ag, 04–1855–ag.

United States Court of Appeals,
Second Circuit.

May 11, 2006.

Bruno Joseph Bembi, Hempstead, New York, for Petitioner.

Ellen Bowden McIntyre, Assistant United States Attorney (James K. Vines, United States Attorney for the Middle District of Tennessee, on the brief), Nashville, Tennessee, for Respondent.

PRESENT: Hon. JOHN M. WALKER, JR., Chief Judge, Hon. JON O. NEWMAN, and Hon. ROSEMARY S. POOLER, Circuit Judges.

### SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 11th day of May, two thousand and six.

UPON DUE CONSIDERATION of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), it is hereby ORDERED, ADJUDGED, AND DECREED, that the petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED for further proceedings consistent with this order.

Sergey, Olen, and Kateryna Kotyrlo, though counsel, petition for review of the BIA decision adopting and affirming Immigration Judge ("IJ") Patricia Rohan's decision denying Sergey Kotyrlo's applications for asylum and withholding of removal. We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA summarily affirms the decision of the IJ without issuing an opinion, see 8 C.F.R. § 1003.1(e)(4), this court reviews the IJ's decision as the final agency determination. E.g., Twum v. INS, 411 F.3d 54, 58 (2d Cir.2005). This court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); e.g., Zhou Yun Zhang v. INS, 386 F.3d 66, 73 (2d Cir.2004). Nevertheless, "the fact that the [agency] has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir.2004). An adverse credibility determination must be based on "specific, cogent reasons" that "bear a legitimate nexus" to the finding. Secaida–Rosales v. INS, 331 F.3d 297, 307 (2d Cir.2003).

The Kotyrlos challenge the IJ's adverse credibility finding. This finding was based on seven factors: (1) the State Department's forensic report indicating that Sergey Kotyrlo's birth certificate, the only document indicating that he is Jewish, was not authentic; (2) petitioners' testimony was embellished and lacked detail; (3) petitioners' testimony lacked "the type of spontaneous response" the IJ expects from credible witnesses; (4) petitioner's testimony failed "to show that [Sergey] knew anything of religious practices in the Jewish religion" and to indicate that he currently practices his religion; (5) Sergey's internal passport indicates that his nationality is Ukranian, not Jewish; (6) implausibilities in petitioners' testimony; and (7) petitioners' failure to submit documentary evidence such as medical records, affida-

vits from family members, and military records.

■ Four of the IJ's proferred bases are not supported by substantial evidence. First, the IJ's determination that Sergey's knowledge of the practices of Judaism and his failure to actively practice his religion in the United States cast doubt on his status as a Jew is fundamentally flawed. Eligibility for asylum on the basis of religious persecution may not be premised on exhibiting a certain level of doctrinal knowledge of one's professed religion. *Rizal v. Gonzales*, 442 F.3d 84, 90 (2nd Cir. 2006). Moreover, in Ukraine, Judaism is considered a nationality as well as a religion. So even if the Kotyrlos did not adhere to any of the practices of Judaism, their official nationality still might be Jewish, thus subjecting them to a risk of persecution on that basis.

■ Second, Sergey explained that, when a Ukranian is issued an internal passport at the age of 16, he may elect to adopt the nationality of either his father or his mother. Sergey's parents ensured that his internal passport identified him as Ukranian, his father's nationality. This explanation is corroborated by the State Department's profile of Ukranian asylum claims. Sergey's possession of an internal passport identifying him as Ukranian thus does not provide substantial evidence for determining that his testimony regarding his Jewish heritage is false.

■ Third, the Kotyrlos offered explanations for the alleged implausibilities in their testimony. The IJ identified two implausible aspects of their account—the means through which their persecutors identified them as Jewish and the timing of Sergey's departure in relation to the attack that he claims motivated him to take his family out of the Ukraine. As to the first implausibility, the Kotyrlos explained that their neighbor and alleged persecutor, with whom Sergey was famil-

iar by looks but not by name, was the son of a woman who worked in the government housing office. In that housing office are documents identifying the location of Jewish households. It is not implausible that a housing office employee would share information about the residences of Jewish families with her Ukranian nationalist son. Sergey also explained that, though the attack on his family in March of 1995 ultimately convinced him that his family should leave the Ukraine, he had obtained his international passport earlier that year because he had been fired and was hoping that he could find work in Poland. And, he did not leave the country immediately after the March attack because he was hoping that his wife would get a visa so that they could travel together. When the day before his own visa expired arrived, and his wife still had not procured a visa for herself, he left the country alone. The IJ was not required to credit these explanations, but she was required to take them into account. Having failed to do so in her decision, she cannot rely on the implausibilities to form a basis for an adverse credibility determination. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 403 (2d Cir.2005).

■ Fourth, an adverse credibility determination based on lack of corroboration is valid only when the IJ identifies missing corroborative documents, explains why they are reasonably available, and assesses the alien's explanations for his failure to provide them. *See Diallo v. INS*, 232 F.3d 279, 289 (2d Cir.2000). All of the corroborative documents identified as missing by the IJ in her decision were reasonably available to petitioner. However, in each case, the IJ either failed to ask the Kotyrlos why they had not submitted the document or to assess the explanation they provided to her. The lack of corroboration

therefore cannot constitute substantial evidence to support the IJ's conclusion.

Some of the IJ's reasons for finding denying the Kotyrlos' application were valid. First, we afford particular deference to an IJ's credibility findings because she is in the best position to evaluate the testimony given before her. *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir.2004). Therefore, the IJ's characterizations of Sergey's testimony as embellished, lacking in detail, or deficient in spontaneity should be credited as valid. Second, the IJ was entitled to rely on the State Department's forensic report identifying Sergey's birth certificate as invalid.

Unfortunately, on the record before us, we find it impossible to determine whether, had the IJ considered only the factors she provided for her adverse credibility finding that were supported by substantial evidence, she would have reached the same conclusion. We must therefore vacate the BIA's December 4, 2002, order summarily affirming the IJ's decision.

The Kotyrlos also challenges the BIA's refusal to *sua sponte* reopen their case despite their untimely filing of a motion to reopen. Having determined, for the reasons stated above, that the case must be remanded to the BIA for further reconsideration, we need not consider the propriety of the BIA's denial of the motion to reopen.

For the foregoing reasons, the petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED for further proceedings consistent with this order. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as

moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).