**Rui Ying LIN, Petitioner,**

v.

**Alberto GONZALES, Attorney General, Respondent.**

**Docket No. 03–4989.**

United States Court of Appeals, Second Circuit.

Argued: March 3, 2006.

Decided: April 12, 2006.

Hanbin Wang, New York, NY, for Petitioner.

John G. Silbermann, Assistant United States Attorney (Christopher J. Christie, United States Attorney for the District of New Jersey, on the brief), Newark, NJ, for Respondent.

Before: WALKER, Chief Judge, CARDAMONE and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Rui Ying Lin ("Lin") petitions for review of an April 25, 2003 order of the Board of Immigration Appeals ("BIA") summarily affirming a December 27, 2001 order of Immigration Judge Barbara A. Nelson (the "IJ") denying Lin's application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").[1] The primary question presented on this appeal is whether the IJ erred in relying on a false document Lin used to evade persecution in China, but did not submit in support of her asylum claim, to require corroboration of, and to disregard Lin's documentary evidence. We hold that the IJ erred. We grant the petition for review and remand to the BIA because we cannot predict that the IJ would reach the same adverse credibility determination absent the errors that were made.

## BACKGROUND

Lin was born in August 1970 in Fujian Province, China. She married Gao Guo Xin in 1989 and registered her marriage with authorities on November 30, 1990. Lin left her homeland in February 2001 and entered the United States on March 13, 2001, at Los Angeles, California. The Immigration and Naturalization Service issued a Notice to Appear in San Pedro, California on March 23, 2001, and Lin subsequently filed an I–589 application for asylum, withholding of removal, and relief under the CAT dated July 10, 2001.

According to Lin's affidavit in support of her application, testimony before the IJ, and documentary evidence submitted at her asylum hearing, Lin gave birth to her first child, a daughter, in July 1990. Shortly thereafter, family planning officials forced her to undergo the insertion of an intrauterine device ("IUD"). The family planning regulation for Fujian Province that Lin submitted in support of her application for asylum provides that members of the "agricultural population" may be granted permission to have a second child if their first child is female. The regulation further provides that, if a couple is granted permission to have a second child, there must be a four-year interval between pregnancies. The State Department Country Report on China for 2000 confirms that couples in rural areas generally are allowed to have a second child if the first is a girl and that in some provinces, once a couple has two children, either the man or the woman must be sterilized. Lin testified that in June 1994, four years after her daughter was born, family planning officials notified Lin that she could remove her IUD and have a second child.

Lin gave birth to her second child, a son, in May 1995. Lin's I–589 indicates that, after the birth, she and her husband knew

---

1. Although Lin initially applied for relief under the CAT, she did not appeal the denial of that claim to the BIA and has not raised that claim on this appeal. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 541 n. 1 (2d Cir. 2005) (noting that petitioner had waived his right to challenge the IJ's denial of his CAT claim by failing to discuss that claim in his appellate brief).

that one of them would have to be sterilized. Accordingly, when family planning officials came to Lin's house, she and her husband were in hiding at a relative's house. The officials levied a fine of 10,000 Yuan against Lin, apparently because she was not available to be sterilized. Lin's husband then obtained a false male sterilization certificate from a friend who worked at a local hospital. Lin's husband presented the false certificate to family planning officials, who were satisfied and did not further seek to sterilize Lin or her husband. Lin then had a second IUD inserted at a private hospital in July 1995 because she did not want to become pregnant immediately after her husband had given the false sterilization certificate to family planning officials. Lin testified at her asylum hearing that she wants more children because she and her husband are farmers and need more children to support them in their old age.

The IJ denied Lynn's application for asylum, withholding of removal, and relief under the CAT on December 27, 2001. The IJ rested her determination on four findings. First, the IJ concluded that there was a "serious internal inconsistency" in Lin's testimony in that Lin testified both that she was given permission to have a second child and that she was fined 10,000 Yuan after having a second child for violating the family planning policy. The IJ further concluded that "this is a very serious implausibility in her claim that she would claim on one hand that she was fined 10,000 Yuan for violating the family planning policies of China while on the other hand also telling the Court that she had been told that she could in fact have a second child."

Second, the IJ held that Lin "ha[d] failed to corroborate her claim in any meaningful fashion"; the IJ noted that she "ha[d] problems in accepting any of the [petitioner's] documents as being genuine as she has admitted that her husband and she used a falsified sterilization certificate to allegedly comply with the family planning policies of China." The IJ then stated that she "wonder[ed] if it were so easy to get a false sterilization certificate to fool the Chinese government why the [petitioner] and her husband would not be willing and able to obtain other false documents to try and fool the U.S. Government."

Third, the IJ noted that Lin had submitted into evidence neither the false sterilization certificate nor a letter from her husband before stating that "corroboration is essential because of problems with [petitioner's] testimony." The IJ also observed that Lin "was extremely hesitant in answering many questions posed to her."

Finally, the IJ concluded that Lin's claim was "too speculative" because she testified that "she had no present fear of being sterilized if she is returned to China because the authorities believe that her husband was sterilized." The IJ then noted that Lin "would only have fear of being sterilized if she became pregnant again."

The BIA summarily affirmed the decision of the IJ by order dated April 25, 2003. This timely appeal followed.

### DISCUSSION

#### I.

Where, as here, the BIA summarily adopted or affirmed the IJ's decision without opinion, we review the decision of the IJ. *See Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005). We review an IJ's factual findings under the substantial evidence standard and overturn them only if any reasonable adjudicator would be compelled to conclude to the contrary. *See* 8 U.S.C. § 1252(b)(4)(B); *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir.2004). Nevertheless, "the fact that the [agency]

has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.2004). An adverse credibility determination must be based on "specific, cogent reasons" that "bear a legitimate nexus" to the finding. *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003). Inconsistent testimony need not be fatal, however, if it is "minor and isolated," and the testimony is otherwise "generally consistent, rational, and believable." *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000). Lack of corroborating evidence may also bear on credibility, but it cannot form the sole basis for an adverse credibility determination. *See id.* at 287. Finally, although we afford particular deference to an adverse credibility determination, we will vacate that determination if it is based on flawed reasoning, such as speculation or conjecture, or an inappropriately stringent standard. *Secaida–Rosales*, 331 F.3d at 307, 312.

## II.

### A.

■ The IJ found Lin's testimony to be internally inconsistent because Lin claimed both that family planning officials authorized her, in 1994, to have a second child and that officials fined her 10,000 Yuan, after she gave birth to her second child, for violating the family planning policy. The IJ appears to have understood Lin's testimony to mean that (1) Lin was fined for having a second child, but that (2) she had been granted permission to have a second child. The government at oral argument conceded that the IJ misperceived Lin's testimony.

Nothing in Lin's testimony suggests that family planning officials levied a fine against her for violating the family plan-

ning policy by having a second child. Instead, Lin testified that the fine was imposed because she and her husband avoided sterilization after giving birth to a second child. Lin testified that, when she had the first IUD inserted in 1990, officials told her that she would be permitted to have a second child, but that she would be sterilized after giving birth to that child. Lin also testified that family planning officials notified her four years after she gave birth to her daughter that she could remove her IUD and have a second child. Moreover, Lin's I–589 indicated that she knew that either she or her husband would have to be sterilized after the second child was born, even though the family was authorized to have a second child. In short, there is nothing inconsistent or implausible in Lin's testimony that she was allowed to have a second child but was fined for avoiding sterilization after giving birth to that child. Lin's testimony is consistent with the family planning regulations of Fujian Province and the State Department Country Report on China. According to the regulations, rural families may be granted permission to have a second child if the first child is female, but they must wait four years after the first child is born to have a second child. The Country Report indicates that, in some provinces, one spouse must be sterilized once a couple has two children. The IJ did not discuss the family planning policy or Lin's testimony as a whole before concluding that Lin's testimony was inconsistent and implausible. Because the IJ mischaracterized Lin's testimony and failed to consider the record evidence, her finding is not supported by substantial evidence.

### B.

■ Lin testified that her husband had obtained a false male sterilization certificate and given it to Chinese family plan-

ning authorities to avoid being sterilized. In light of this testimony, the IJ stated that she had difficulty accepting as authentic the documents Lin submitted in support of her claim and found that Lin had failed to corroborate her claim for asylum "in any meaningful fashion." Substantial evidence does not support this finding.

The IJ treated Lin's evidence as if one false document used to escape persecution, but not submitted into the record, called into question the authenticity of all her documentary evidence. The assumption underlying this approach, known as *falsus in uno, falsus in omnibus* (false in one thing, false in everything), Black's Law Dictionary 637 (8th ed.2004), has limits. An IJ may be justified in some circumstances in concluding that a falsified document that goes to the heart of an applicant's claim for asylum, if submitted as evidence in an asylum proceeding, calls into question the authenticity of other documents submitted in support of that application. The BIA has distinguished, however, between the presentation of a fraudulent document in immigration court in support of an asylum application and the use of a fraudulent document to escape immediate danger or imminent persecution. *See In re O–D–*, 21 I. & N. Dec., 1998 WL 24904, 1079, 1081 (BIA 1998). The false document at issue in this case plainly falls into the latter category. Indeed, it illustrates the limited value of the *falsus in uno* maxim. A false sterilization certificate submitted to family planning officials to evade persecution does not reasonably discredit the authenticity of other documents submitted in an entirely different context.

The circumstances surrounding the creation and use of some false documents, and those documents' relationship to an asylum proceeding, do very little to undermine the authenticity of other doc-

uments. A person who obtains false documents to escape persecution does not, as a result, face a higher burden of persuading an IJ of his or her credibility. People attempting to escape persecution reasonably use all means at their disposal to do so. They may lie to their government; indeed, the greater the danger of persecution, the more likely it is that they will. A reasonable person facing forced sterilization may offer false documents to escape it. The IJ in this case, however, disregarded completely the context in which Lin's husband procured a false document. The IJ thus erred by relying on the submission of that document to the Chinese family planning authorities to reject summarily documentary evidence submitted in support of Lin's asylum application and to require that Lin corroborate those documents with something more than her testimony. An IJ's duty is not to determine whether an applicant has been unwaveringly honest throughout his or her life, even when dishonesty could have saved him or her from persecution, but merely to determine whether the applicant's account of persecution and fear is reliable.

The BIA and several of our sister circuits have recognized that a petitioner's use of false travel documents to escape persecution is fully consistent with an asylum claim and should not be used as a basis to deny asylum. *In re O–D–*, 21 I. & N. Dec. at 1083 ("[T]here may be reasons, fully consistent with the claim of asylum, that will cause a person to possess false documents, such as the creation and use of a false document to escape persecution by facilitating travel."); *In re Fauziya Kasinga*, 21 I. & N. Dec. 357, 368 (BIA 1996) (reversing an IJ's discretionary denial of asylum where the applicant had used a fraudulent passport to come to the United States, but admitted its falsity to an immigration inspector at the border); *Nreka v.*

*U.S. Att'y Gen.*, 408 F.3d 1361, 1368 (11th Cir.2005) ("[D]ocuments to facilitate travel or gain entry into the United States cannot in and of themselves be used as the basis to deny asylum."); *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1138 (9th Cir.2004) ("When a petitioner who fears deportation to his country of origin uses false documentation or makes false statements in order to gain entry to a safe haven, that deception does not detract from but supports his claim of fear of persecution.") (citation and internal quotation marks omitted); *Yongo v. INS*, 355 F.3d 27, 33 (1st Cir.2004) ("A lie by a fleeing victim to a tyrant's border guard is not the same as a lie under oath in an INS proceeding about the circumstances of persecution."); *Akinmade v. INS*, 196 F.3d 951, 955 (9th Cir.1999) ("[W]e recognize that a genuine refugee escaping persecution may lie about his citizenship to immigration officials in order to flee his place of persecution or secure entry into the United States."). We have recently stated that "if illegal manner of flight ... were enough independently to support a denial of asylum, ... virtually no persecuted refugee would obtain asylum." *Wu Zheng Huang v. INS*, 436 F.3d 89, 100 (2d Cir.2006).

■ As unreasonable as it is to penalize an applicant for lying to escape a country where he or she faces persecution, it is even more unreasonable to penalize an applicant for lying to escape persecution itself. A false document used to negate a condition precedent for persecution is fully consistent with a claim for asylum. In fact, it supports such a claim. Evidence that a person has lied to his or her government about his or her identity or about whether he or she has been sterilized, if believed, is powerful proof that the petitioner fears the consequences of the truth. We thus hold that an IJ errs when he or she credits an applicant's testimony about

obtaining a false document in order to evade persecution and then relies on that testimony in summarily disregarding the documents submitted in support of an asylum application and in automatically requiring corroboration of those documents.

■ Our discussion thus far has focused on the IJ's reasoning that because Lin's husband had obtained a false document to evade sterilization, Lin was likely *willing* to use false documents in support of her asylum application. We have rejected that reasoning as fundamentally flawed. The IJ expressed also the view that because Lin was *capable* of accessing falsified documents, all of the documents presented in support of her claim may have been false. This reasoning is also deeply flawed. Lin testified that her husband was able to procure a sterilization certificate because he had a friend who worked at a hospital. No record evidence indicates that Lin had obtained, or knew how to obtain, any documents from a professional forger. Even if there were record evidence of Lin's ability to acquire such documents, the salient question is whether there are reasons to doubt the authenticity of the proffered documents. Every witness has the ability to lie. Moreover, given the prevalence of forgery in China, according to the State Department Country Report, most Chinese asylum applicants presumably have the ability to obtain false documents. But it is not reasonable for an IJ to conclude, on that basis, that every witness lies or that every document from China is presumptively a forgery. As in all other factual findings, the IJ's conclusion that a petitioner's documents were fraudulent must be based on more than speculation and conjecture. *Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 115 (2d Cir.2005). In this case, the error was particularly egregious because the IJ did not evaluate Lin's documentary

evidence on its own merits, question Lin about the authenticity of any of the documents she presented, or otherwise probe the authenticity of those documents. The IJ's conclusion that the document should be given no weight is therefore not supported by substantial evidence.

The IJ engaged in more than mere speculation by disregarding Lin's documentary evidence. Lin's testimony that her husband obtained a false sterilization certificate supports, rather than detracts from, her claim of fear of persecution, and it would be anomalous to use an asylum seeker's means of evading persecution to render her, in effect, ineligible for asylum. It would be pernicious indeed if asylum applications were discounted when applicants used false documentation to protect themselves from the very persecution they claimed to be fleeing.

### C.

■ Although the IJ did not accept any of Lin's documents as authentic, she faulted Lin for not providing more. Specifically, she questioned Lin's failure to provide the false sterilization certificate and a letter from her husband as evidence at the hearing. Discussing the absence from the record of a letter from Lin's husband, the IJ, apparently referencing Lin's testimony about the 10,000 Yuan fine, emphasized that "corroboration is essential" because of the "serious implausibility" in Lin's testimony.

We have previously explained that an IJ cannot render an adverse credibility determination based on lack of corroboration without (1) ruling explicitly on the credibility of the applicant's testimony, (2) explaining why it is reasonable in the circumstances of a particular case to expect corroboration, and (3) assessing the sufficiency of the applicant's explanations for the absence of corroborating evidence.

*Diallo,* 232 F.3d at 287. With respect to the false sterilization certificate, Lin testified that she never saw the document and that her husband had submitted it to the village government in 1995. The IJ neither explained why it was reasonable to expect Lin to have a copy of the certificate nor assessed the sufficiency of Lin's explanations for its absence; the IJ thus failed to meet the standard we established in *Diallo.* With respect to a letter from Lin's husband, the IJ's insistence on corroboration clearly stemmed from the perceived, but non-existent, inconsistency in Lin's testimony and therefore did not constitute an independent ground for denying Lin's application.

■ The IJ also noted that Lin "was extremely hesitant in answering many questions posed to her." An IJ's assessment of an applicant's demeanor is entitled to deference because of the IJ's unique advantage of observing the applicant at the asylum hearing. *Zhou Yun Zhang,* 386 F.3d at 73. The IJ's limited and passing reference to Lin's demeanor, however, is insufficient to conclude that, absent the errors, the IJ would have made the same credibility determination in light of the IJ's repeated emphasis on her other erroneous grounds for disbelieving Lin.

### D.

■ Relying on Lin's testimony that she has no present fear of being sterilized if she were to return to China unless she were to become pregnant again, the IJ concluded that Lin's claim was "too speculative" to merit asylum. This finding is not supported by substantial evidence. Just as an IJ "must give specific, cogent reasons for rejecting [a] petitioner's testimony" as incredible, *Ramsameachire,* 357 F.3d at 178 (citation and internal quotation marks omitted), he or she must provide

specific, cogent reasons for discounting an applicant's claim as speculative. The IJ acknowledged that Lin's fear of persecution would be well-founded if she became pregnant again. The IJ failed, however, to point to any evidence in the record establishing Lin's future pregnancy as speculative. Lin offered evidence that she already had two children, that she planned to have more, that she had gone to great lengths to avoid being sterilized in China, and that she had removed her IUD after escaping to the United States. In the absence of some proof of Lin's infertility, it is not clear what is speculative about her desire to have more children or her ability to do so. The IJ's conclusion that Lin's claim is speculative is thus not supported by substantial evidence.

### E.

 The government has, in its brief, identified other purported inconsistencies in the record that the IJ did not mention in her ruling. "[O]ur deferential review of the IJ's factual findings does not require us to seek alternative grounds for affirmance where the grounds set forth by the IJ are insufficient." *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 340 (2d Cir.2006). Instead,

> we will limit our review of the IJ's decision to the reasons she actually articulates and ordinarily will not affirm based on evidence that may appear in the record but that was not relied on in the IJ's decision because we cannot know how the IJ would have viewed evidence she did not analyze. To assume a hypothetical basis for the IJ's determination, even one based in the record, would usurp her role.

*Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400 (2d Cir.2005) (internal citations omitted). We thus decline to consider any purported inconsistencies in the record upon which the IJ did not rely in reaching her determination.

Three of the four reasons identified by the IJ in support of her ruling were erroneous, and the fourth reason is inadequately explained. Because we cannot predict that the IJ would reach the same decision despite the errors that were made, *see Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 162 (2d Cir.2006), remand is appropriate in this case.

### CONCLUSION

For the foregoing reasons, we GRANT the petition for review and REMAND the case to the BIA with instructions to REMAND to the IJ for further proceedings consistent with this opinion.