**ZHONG RONG LI, Petitioner,**

v.

**Alberto R. GONZALES, Respondent.**

No. 05–6135–ag.

United States Court of Appeals, Second Circuit.

May 22, 2006.

Michael Brown, New York, New York, for Petitioner.

Alice H. Martin, United States Attorney, Northern District of Alabama; Jenny L. Smith, Assistant United States Attorney, Birmingham, Alabama, for Respondent.

PRESENT: Hon. B.D. PARKER, Hon. REENA RAGGI, and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Zhong Rong Li, through counsel, petitions for review of the BIA's order affirming the decision of the immigration judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Petitioner asserts that, after the birth of his first child, the Chinese government forced his wife to undergo two abortions. Petitioner contends that, if returned to China, he would be persecuted for violating and resisting China's one-child policy. The IJ concluded, among other things, that petitioner submitted two fraudulent documents in support of his application. Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues.

When the BIA adopts the decision of the IJ and supplements the IJ's decision, this Court reviews the decision of the IJ as supplemented by the BIA. *See Yu Yin Yang v. Gonzales,* 431 F.3d 84, 85 (2d Cir.2005); *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). This Court reviews the agency's factual findings under the substantial evidence standard. *See Secaida–Rosales v. INS,* 331 F.3d 297, 306–07 (2d Cir.2003). Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

We have recently emphasized that the BIA has distinguished between "the presentation of a fraudulent document in im-

migration court in support of an asylum application and the use of a fraudulent document to escape immediate danger or imminent persecution." *Rui Ying Lin v. Gonzales*, 445 F.3d 127, 133 (2d Cir.2006) (citing *In re O–D–*, 21 I. & N. Dec. 1079, 1081, 1998 WL 24904 (BIA 1998)). In *Rui Ying Lin*, we noted that the "BIA and several of our sister circuits have recognized that a petitioner's use of false travel documents to escape persecution is fully consistent with an asylum claim and should not be used as a basis to deny asylum." *Id.* (citations omitted). We therefore held that "an IJ errs when he or she credits an applicant's testimony about obtaining a false document in order to evade persecution and then relies on that testimony in summarily disregarding the documents submitted in support of an asylum application and in automatically requiring corroboration of those documents." *Id.* at 134. Unlike *Rui Ying Lin*, however, the instant case involves allegedly fraudulent documents that were used not to escape immediate danger or imminent persecution but only in support of petitioner's asylum application.

■ We conclude that substantial evidence supports the IJ's factual determination that the documents were fraudulent. When the IJ became concerned with the authenticity of petitioner's documents— two abortion certificates and a fine notice, the IJ requested that the United States Department of Homeland Security ("DHS") verify these documents. DHS, through the American Consulate in China, contacted Taijiang District Hospital of Fuzhou City about one of the abortion certificates and Fu Ji Co., Ltd. of Fujian about the fine notice. Based on information that DHS obtained through these Chinese sources, DHS reported to the IJ that the abortion certificate and fine notice had been fabricated. We question the efficacy of the DHS practice of relying on sources seemingly under the control of the very government against which petitioner alleges persecution. However, we cannot say that the IJ, in relying on the DHS's investigation report, acted without substantial evidence or on mere speculation and conjecture.

First, the IJ relied on the DHS investigation report itself, and that report concluded that petitioner submitted fraudulent documents regarding his wife's abortion and his fine for violating the one-child policy—documents that go "to the heart of his claim." *Desta v. Ashcroft*, 365 F.3d 741, 745 (9th Cir. 2004). While other courts of appeals have determined that an adjudicator must find that the petitioner *knew* a document was fraudulent in order to support a conclusion that the petitioner was not credible, *see Kourski v. Ashcroft*, 355 F.3d 1038, 1038–39 (7th Cir.2004); *Yeimane–Berhe v. Ashcroft*, 393 F.3d 907, 911–12 (9th Cir.2004), this Court has not imposed an actual knowledge requirement where a fraudulent document is submitted in support of an asylum application, *see Borovikova v. United States*, 435 F.3d 151, 157–58 (2d Cir.2006).

Second, the IJ acted within his discretion in giving more weight to the DHS investigation report than to the rebuttal affidavit submitted by petitioner's wife. Under similar circumstances, we recently held in *Borovikova* that, "absent a satisfactory explanation or rebuttal by petitioner," an IJ may rely on an embassy's finding of a fraudulent birth certificate to impeach the alien's general credibility. 435 F.3d at 157–58. Similarly, here, the IJ was entitled to give more weight to the DHS investigation report than petitioner's wife's rebuttal affidavit and to conclude that petitioner did not provide a satisfactory explanation or rebuttal.

Third, even though (as discussed below) petitioner contends that DHS failed to protect his and his wife's anonymity when it contacted the American Consulate in China (who, in turn, contacted a Chinese hospital and work unit), petitioner never objected to the *reliability* of the DHS's method of acquiring information. That is, petitioner does not claim here that DHS, in attempting to authenticate documents, may not use sources from inside the country of the alleged persecution. Overall, therefore, the IJ's conclusion that petitioner's documents were fraudulent was based on "more than speculation and conjecture," *Rui Ying Lin,* 445 F.3d at 134 (citing *Jin Chen v. U.S. Dep't of Justice,* 426 F.3d 104, 115 (2d Cir.2005)), and a reasonable adjudicator would not have been compelled to conclude that the documents were authentic.

The BIA has spoken previously on the issue of fraudulent documentation in *In re O–D–,* 21 I. & N. Dec. 1079, 1998 WL 24904 (BIA 1998). There, the BIA held that the petitioner, a Mauritania citizen claiming that he was subjected to beatings, torture and forced labor, "compromised the integrity of his entire claim by submitting at least one fraudulent document [a counterfeit identity card] vis-à-vis a germane aspect of such claim and by failing to explain his fraud." *Id.* at 1084. One of our sister circuits, in commenting upon *In re O–D–,* has noted that an interpretation of the case that *"require[d] a fact-finder automatically to discredit all of an applicant's testimony wherever a lie was told"* would be a "blatant misreading of *In re O–D–* and an irrational rule to boot." *Yongo v. INS,* 355 F.3d 27, 34 (1st Cir.2004). Here, however, even assuming that the First Circuit's interpretation of *In re O–D–* is correct, the IJ did not discredit all of petitioner's testimony in light of the allegedly fabricated documents. Rather, the IJ

and BIA both found that—independent of the fabricated documents—petitioner's testimony was inconsistent and incomplete. While some of the discrepancies in petitioner's testimony appear relatively minor, we afford " 'particular deference' " in applying the substantial evidence standard when a factual challenge pertains to a credibility finding made by an IJ and adopted by the BIA. *Zhou Yun Zhang v. United States,* 386 F.3d 66, 73 (2d Cir. 2004) (quoting *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997)). At the very least, petitioner's testimony, coupled with petitioner's wife's rebuttal affidavit, did not establish the type of consistent, complete, and plausible explanation necessary for overcoming the IJ's finding with regard to the fabricated documents—a finding that, as discussed above, is supported by substantial evidence. *See In re O–D–,* 21 I. & N. Dec. at 1084 (holding that "the remaining inconsistent record presented by the respondent is insufficient to overcome the pall cast on the respondent's credibility by virtue of his submission of the counterfeit document").

██ Finally, Petitioner asserts (as he did before the BIA) that he has a "new fear of future persecution" based on the DHS's efforts in authenticating the abortion certificates and fine notice. Petitioner claims that the DHS, in contacting the Chinese hospital and Chinese work unit, may have alerted the Chinese government to his claim for asylum. He alleges that such a revelation could subject him to detention, beatings, and torture if he returned to China. In reviewing this aspect of petitioner's claim, the BIA was "not persuaded by [petitioner's] bald allegations that the DHS and the American Consulate in China divulged [petitioner's] application for asylum to the Chinese government, or that [petitioner] would reasonably face persecution as a consequence thereof."

128

The INA prohibits the disclosure of information pertaining to any asylum application and provides that the government will ensure that the confidentiality of the records involved will be maintained if they are transmitted to the Department of State offices in other countries. *See* 8 C.F.R. § 208.6 (subsequently recodified at 8 C.F.R. § 1208.6 (2005)). In analyzing petitioner's claim, however, we agree with the government that there is no evidence in the record to show that the DHS's efforts to authenticate these documents would have an effect on petitioner upon his return to China. We also note that petitioner fails to present any legal authority for challenging the BIA's conclusion in this regard. As a result, we reject petitioner's contention that the DHS has created a new risk of future persecution. Consequently, we conclude that petitioner's claims for asylum, withholding of removal, and CAT relief are each without merit.

Accordingly, for the reasons set forth above, the decision of the BIA is hereby **AFFIRMED,** and the petition for review is **DENIED.** Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).