**LIN YAN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE ATTORNEY GENERAL, Respondent.**

No. 06–4664–ag.

United States Court of Appeals, Second Circuit.

June 12, 2007.

David X. Feng, New York, NY, for Petitioner.

Lindsay E. Williams, Office of Immigration Litigation, Washington, D.C. (Peter D. Keisler, Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, Office of Immigration Litigation, on the brief), for Respondent.

Present: Hon. CHESTER J. STRAUB, Hon. ROSEMARY S. POOLER, Circuit Judges, Hon. ERIC N. VITALIANO,* District Judge.

* Eric N. Vitaliano of the United States District Court for the Eastern District of New York, sitting by designation.

## SUMMARY ORDER

Lin Yan, a native and citizen of China, seeks review of a September 15, 2006 order of the BIA affirming without opinion Immigration Judge ("IJ") Gabriel C. Videla's April 5, 2005 decision denying Lin's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Lin Yan,* No. A79 408 066 (B.I.A. Sept. 15, 2006), *aff'g* No. A79 408 066 (Immig. Ct. N.Y. City Apr 5, 2005). We assume the parties' familiarity with the underlying facts and procedural history of the case.

Where, as here, the BIA issues an opinion that fully adopts the IJ's decision, we review the IJ's decision. *See, e.g., Chun Gao v. Gonzales,* 424 F.3d 122, 124 (2d Cir.2005); *Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003). We review factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005). We must "ensure that the IJ's conclusions were not reached arbitrarily or capriciously ... [and] that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Zhou Yun Zhang,* 386 F.3d at 74 (internal citations and quotation marks omitted). This Court reviews *de novo* questions of law and the application of law to undisputed fact. *See, e.g., Secaida–Rosales,* 331 F.3d at 307.

In the present case, the IJ denied asylum based on an adverse credibility determination. In concluding that Lin lacked credibility, the IJ made the following five findings: (1) Lin's statements to the airport inspector when he arrived in the United States were inconsistent with his subsequent statements and testimony; (2) it was implausible that petitioner's brother did not suffer any adverse consequences resulting from their parents' practice of Falun Gong in China; (3) it was implausible that petitioner's uncle was able to obtain petitioner's birth certificate from Chinese authorities; (4) Lin's testimony regarding his Chinese identification card was not credible; and (5) petitioner's testimony that he now practices Falun Gong and would be persecuted by the Chinese government for doing so was not credible. The IJ further found that putting aside the adverse credibility determination, asylum should be denied in the exercise of discretion because Lin obtained a "safe haven" in Mexico before arriving in the United States. Because we find that the IJ's adverse credibility determination was not supported by substantial evidence, and because we find that the IJ erred in concluding that petitioner had obtained a "safe haven" in Mexico, we remand the case to the BIA.

First, the IJ erred in rejecting Lin's explanation for certain omissions in his airport interview. Lin explained repeatedly that he did not discuss his asylum claim at the airport because his grandmother had advised him that the asylum claim was very important and should not be raised until Lin had the assistance of an attorney. The IJ rejected this explanation, concluding that "it would make absolutely no sense" for Lin to conceal any asylum information during his airport interview, given that Lin's purpose in coming to the United States was to seek asylum. Because the IJ's conclusory statements demonstrate that he failed to

engage in "a reasoned evaluation of [petitioner's] explanations, the ·IJ's conclusion ... was based on flawed reasoning and, therefore, cannot constitute substantial evidence supporting [the IJ's ultimate] conclusion." *Cao He Lin*, 428 F.3d at 403; *see also Rui Ying Lin v. Gonzales*, 445 F.3d 127, 135 (2d Cir.2006) (noting that an IJ "must give specific, cogent reasons for rejecting [a] petitioner's testimony"). Moreover, we note that the record supports Lin's claim that he was willing to discuss his asylum claim only after he met an attorney. As Lin explained during his testimony before the IJ, he met once with an attorney before the credible fear interview. During that second interview, having met with an attorney, Lin presented the basic facts supporting his asylum claim.

■ Second, petitioner's explanation of why his brother had not been persecuted was not implausible. When asked about his brother during cross examination, petitioner responded that he was in hiding. The IJ found this explanation unconvincing, reasoning, "it's not clear where he's in hiding, when he went into hiding, under what circumstances, and so on." However, neither the government attorney nor the IJ asked petitioner for these details during the hearing. *See Ming Shi Xue v. BIA*, 439 F.3d 111, 114–15 (2d Cir.2006) (stating that an IJ may not rely on a discrepancy that is not self-evident "to support a credibility determination without first bringing the perceived discrepancy to the alien's attention, thereby giving the alien an opportunity to address and perhaps reconcile" the discrepancy to the IJ's satisfaction). "Where an applicant gives very spare testimony ... the IJ or the INS may fairly wonder whether the testimony is fabricated. But instead of reflexively surrendering to nagging doubts about an applicant's credibility due to the spareness of her testimony, we [have] encouraged the IJ (along with the INS) to probe for incidental details, seeking to draw out inconsistencies that would support a finding of lack of credibility." *Id.* at 122–23 (citations and internal quotation marks omitted); *see also Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 152 (2d Cir.2003) (vacating and remanding because the agency "erred in denying asylum on the basis of insufficient testimonial specificity").

■ Third, the IJ improperly relied on the purportedly fraudulent birth certificate in making the adverse credibility determination. The IJ concluded that "[e]ither the document is authentic and it was issued through the uncle because the authorities really have no reason to look for the [petitioner] or even less to arrest him, or in the alternative, this document is fraudulent. . . . Either way, the result is the same. The [petitioner]'s credibility is undermined." In finding that petitioner's credibility was undermined, the IJ stated, "[t]he [petitioner] claims that this document is authentic and that he believes.this because his uncle obtained it." The IJ's finding, however, is clearly erroneous because petitioner did not, in fact, claim that the document was authentic. When asked about the document's authenticity during the hearing, the petitioner responded, "that one was, was sent by my uncle in a package, mail it. to me. I do not know whether the document is genuine one or authentic, authenticated." In certain circumstances, an adverse credibility finding might reasonably be based on the applicant's submission of a fraudulent document as evidence in an asylum proceeding. *See Rui Ying Lin*, 445 F.3d at 133; *In re O–D–*, 21 I. & N. Dec. 1079 (B.I.A.1998). Indeed, it may be permissible for an IJ to rely solely on the submission of such a document in making an adverse credibility determination. *See Borovikova v. U.S. Dep't of Justice*, 435 F.3d 151, 158 (2d Cir.2006). However, whereas in *Matter of*

*O–D–,* the document in question was found to be counterfeit by a forensics expert, the petitioner's birth certificate in the present case was simply assumed to be fraudulent by the IJ. Moreover, the IJ erred in assuming that Lin knew the birth certificate was fraudulent when he submitted it. Lin maintained throughout the proceedings that he did not know how the birth certificate was obtained by his uncle, and that he was unsure of whether it was fraudulent or not. *See Kourski v. Ashcroft,* 355 F.3d 1038 (7th Cir.2004) (rejecting the agency's reliance on a forged birth certificate because there was no evidence that the petitioner knew or suspected the document to be forged when he submitted it). Because the agency failed to consider the birth certificate in context or to make findings supporting petitioner's knowing submission of fraudulent evidence, we cannot conclude on the present record that the adverse credibility finding was supported by substantial evidence. *See Latifi v. Gonzales,* 430 F.3d 103, 105 (2d Cir. 2005) (per curiam).

█ Fourth, the IJ found that Lin's testimony regarding his Chinese identification card was not credible. As the government concedes, the testimony surrounding this point is, at best, "confusing." However, contrary to the IJ's finding, Lin's testimony was neither internally inconsistent nor contradictory. Lin testified that he used his identification card when traveling in China, but when he was not traveling, he left the card with his grandmother. When asked when he last left the card with his grandmother, Lin responded, "I did not recall that, remember, remember that on purpose. I did not have a good impression. Maybe in the end of 2000 or did not have this kind of impression. Because I just say that took it in an easy way, I did not have a special arrangement." Later in his testimony, petitioner stated that he had an identification card with him when he traveled from China to the United States

in 2001. When asked why he had stated that he left a card with his grandmother in 2000, petitioner replied that he was referring to a new card. Lin stated that he received a new card in the year 2000, and it was this new card that he left with grandmother and subsequently submitted to the IJ, along with other documents Lin's uncle mailed to the United States from China. Evidence in the record supports petitioner's statement. Petitioner submitted his Chinese identification card, which states that it was issued on April 29, 2000. In discrediting petitioner's testimony, the IJ indicated that she found it implausible that petitioner was able to obtain a new card two years before his old card was to expire. However, absent consideration of evidence that the Chinese government does not renew identification cards two years in advance of an old card's expiration, the IJ's assessment amounted to impermissible speculation. *Cao He Lin,* 428 F.3d at 405 ("hold[ing] that, absent record evidence of practices in foreign countries, the IJ must not speculate as to the existence or nature of such practices").

█ Fifth, the IJ found not credible petitioner's testimony that he now practices Falun Gong in the United States and would be persecuted by the Chinese government for doing so. The IJ reasoned:

> the [petitioner] appears to be somewhat familiarized with some information about Falun Gong and the movements and all that. He really hasn't presented any other evidence that he practices in the United States.... But putting that issue aside, I do note that the [petitioner] simply said that he practices Falun Gong at home everyday and occasionally when he's off from work, he practices in the park. So it would seem to me that if he were to return to China and he would want to practice Falun Gong, he would stay home and practice Falun Gong to

his heart's delight without any consequences. Nobody would bother him at [all].... I don't see a problem for the [petitioner]. I don't see that he would have any necessity to practice in any public places in China and risk being detained, since the [petitioner] in the United States where he's completely free to practice everywhere he wants to, he has chosen to practice mostly at home.

An adverse credibility finding may not rest solely on a lack of corroboration. *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000). Thus, because we conclude that the other bases for the IJ's credibility finding in this case were not supported by substantial evidence, the IJ's finding regarding corroboration is not sufficient to sustain the adverse credibility finding. Moreover, the IJ also erred in assuming that Lin would be able to avoid persecution in China by practicing Falun Gong in his home given the language in the 2004 U.S. Department of State Country Report on Human Rights Practices for China, which was submitted to the IJ, stating that "[s]ince the government banned Falun Gong in 1999, the mere belief in the discipline (even without any public manifestation of its tenets) has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment." *Cf. Zhang v. Ashcroft*, 388 F.3d 713, 719 (9th Cir. 2004) ("[W]e reject the IJ's finding that [petitioner] could avoid persecution in China by practicing Falun Gong in the privacy of his own home.... [T]o require [petitioner] to practice his beliefs in secret is contrary to our basic principles of religious freedom and the protection of religious refugees.").

■ Finally, the IJ determined that asylum should also be denied as a matter of discretion because Lin obtained a "safe haven" in Mexico while en route to the United States. That finding was also flawed. While the regulations once included a provision allowing an IJ to make a negative discretionary finding based on an alien's stay in another country, that regulation was repealed several years before Lin's hearing, and stays in third countries are now relevant only to the analysis of whether an alien was firmly resettled under 8 C.F.R. § 1208.15. The IJ did not address that issue here. *See Tandia v. Gonzales*, 437 F.3d 245, 248–49 (2d Cir. 2006). Moreover, there is no evidence that Lin received "an offer of permanent resident status, citizenship, or some other type of permanent resettlement" in Mexico so that he could be considered firmly resettled pursuant to 8 C.F.R. § 1208.15.

Given the errors identified above, we must remand because we cannot "state with confidence" that the agency would reach the same result absent these errors. *Cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 162 (2d Cir.2006) (holding that affirmance is appropriate where the identified error clearly did not alter the result reached). Accordingly, the case must be remanded.

For the foregoing reasons, the petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this decision. Petitioner's pending motion for a stay of removal is DENIED as moot.