**MEI YUE DONG, Petitioner,**

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

No. 06–5104.

United States Court of Appeals, Second Circuit.

July 3, 2007.

Farah Loftus, Law Office of Farah Loftus, Los Angeles, CA, for Petitioner.

William L. Deneke, Ass't U.S. Attorney, for Craig S. Morford, U.S. Attorney for the Middle District of Tennessee, Nashville, TN, for Respondent.

PRESENT: Hon. GUIDO CALABRESI, Hon. B.D. PARKER and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Petitioner Mei Yue Dong, a native and citizen of the People's Republic of China, petitions for review of the October 18, 2006 decision of the BIA affirming the April 5, 2005 decision of Immigration Judge ("IJ") Elizabeth A. Lamb denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In Re Mei Yue Dong,* No. A97 851 823 (B.I.A. Oct. 18, 2006), *aff'g* No. A97 851 823 (Immig. Ct. N.Y. City Apr. 5, 2005). Dong sought relief on the ground that she had been persecuted for violating the family planning policies of the

People's Republic of China by being forced to have an abortion. We assume the parties' familiarity with the facts of this case, its procedural posture, and the decision below.

When the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005).

■ The IJ found Dong not to be credible based on purported inconsistencies between her testimony and the abortion certificate which she submitted for review. Contrary to the IJ's conclusion, however, these alleged inconsistencies in Dong's testimony, stating the color of the abortion certificate and naming the hospital where the abortion allegedly was performed, were far from a sufficient basis to support an adverse credibility finding. While minor inconsistencies need not be overlooked, nevertheless "[w]here an applicant's testimony is generally consistent, rational, and believable, [inconsistencies in the petitioner's testimony] need not be fatal to credibility, especially if the errors are relatively minor and isolated." *Diallo v. INS,* 232 F.3d 279, 288 (2d Cir.2000). Further, the IJ acknowledged—but failed to evaluate—Dong's testimonial explanation for the apparent inconsistency between the residential address noted on her abortion certificate and the address of her household registration. *See id.*

Rather than relying on these "inconsistencies," the IJ based her adverse credibility finding in substantial part on the U.S. Consulate's "Report of Investigation," which concluded that Dong's abortion certificate was a forgery. This was improper because the report fails to meet minimum indicia of reliability analogous to those we identified in *Zhen Nan Lin v. United States Dep't of Justice,* 459 F.3d 255 (2d Cir.2006). In *Zhen Nan Lin,* we found a

"Consular Report to be highly unreliable and therefore insufficient to satisfy the substantial evidence requirement," *id.* at 269, and based on that particular report we identified a nonexhaustive set of guidelines establishing what type of information should be evident in a reliable report: "(i) the identity and qualifications of the investigator(s); (ii) the objective and extent of the investigation; and (iii) the methods used to verify the information discovered." *Id.* at 271.

■ The specific requirements of *Zhen Nan Lin,* to be sure, were attuned to the particular set of facts in that case, but they nonetheless reflect the requirements of reliability which the U.S. Consulate report in the instant case failed to provide. The report identified the name of the investigator but omitted her qualifications. The absence of such information is especially troubling in light of this particular investigator's history of unreliability—noted by our court, and other courts—in reporting abortion certificates to be inauthentic. *See Zhen Nan Lin,* 459 F.3d at 272 n. 10; *Qiu Rong Lin v. Ashcroft,* 83 Fed.Appx. 480, 485 (3d Cir.2003) (unpublished). Further, the report's description of the investigator's methodology was limited to the fact that she sent the certificate to the hospital and that she received a response, *see Zhen Nan Lin,* 459 F.3d at 272; and the report contained numerous hearsay statements from hospital personnel regarding the stamp and the doctor's signature, without corroboration. The Report does not indicate that Ms. Liu attempted to contact the doctor to corroborate the hospital's claim that the signature was a forgery, nor that Ms. Liu tried to obtain a copy of an abortion certificate from the hospital in order to compare the formatting and the size of the hospital seal with that of Dong's certif-

icate. We indicated in *Lin* that when the Consular Report concludes that the petitioner's document is a forgery solely on the basis of statements by the foreign government's agents, the Consular Report should explain what efforts the investigator took to verify those statements. 459 F.3d at 272. If no additional steps were taken, the Report should explain "why such a verification was impossible or unduly burdensome." *Id.* (citation omitted). Moreover, the IJ critically failed to address the affidavit of petitioner's expert witness which calls into serious question the reliability of the sources on which the report relies for its forgery finding. Accordingly, the consular report was not a reliable basis to support the finding that the abortion certificate was a forgery. Given the IJ's erroneous reliance on the fraudulent nature of the abortion certificate, we cannot state with confidence that the same decision would be made on remand. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 335 (2d Cir.2006).

The BIA concluded, citing *Tu Lin v. Gonzales,* 446 F.3d 395 (2d Cir.2006), that even if "the abortion certification is regarded as valid, it would serve to undermine the claim that the abortion was forced." We have upheld an IJ's reliance on a State Department country profile which suggests that the only documents resembling "abortion certificates" frequently are merely sick-leave "excuse-letters for workers who undergo abortion voluntarily," see *Tu Lin,* 446 F.3d at 400 (citing U.S. DEPARTMENT OF STATE, CHINA: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS 24 (Apr. 14, 1998)). Yet we also have made clear that such observations of a State Department country report "do not automatically discredit contrary evidence presented by the applicant" and "are not binding on the immigration

court." *Id.* (quoting *Tian–Yong Chen v. INS,* 359 F.3d 121, 130 (2d Cir.2004)).

In the instant case, the BIA did not reference any country profile indicating that abortion certificates, if valid, are only for sick-leave after a voluntary abortion. Consequently, the decision leaves unclear the extent to which the BIA intended to rely on this basis. We need not, however, determine whether its citation to *Tu Lin* should suffice to deem dispositive such a country profile that is outside the record, because, in this case, the IJ and BIA relied overwhelmingly, and manifestly, on the falsity of the document for its credibility determination. Since we lack the required confidence that the result would be the same absent a conclusion of document falsity, we cannot conclude that remand would be futile. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 402 (2d Cir.2005).

■ Finally, petitioner appeals the agency's denial of her CAT relief claim. Dong failed to brief and argue this issue before our court. That claim is, therefore, waived. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 541 n. 1, 545 n. 7 (2d Cir. 2005).

For the foregoing reasons, the petition for review is **GRANTED,** the order of the BIA is **VACATED,** and the case is **REMANDED** for further proceedings.