**Ali SHAH, Petitioner,**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 07–1954.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 2, 2008.

Filed April 11, 2008.

Anser Ahmad, Harrisburg, PA, for Petitioner.

Richard M. Evans, Linda S. Wendtland, Sada Manickam, Ashley B. Han, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: FUENTES, WEIS and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

Ali Shah petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his appeal rom a decision by an Immigration Judge ("IJ"). For the reasons that follow, we will grant the petition.

I.

Shah is a native and citizen of Pakistan who entered the United States without having been admitted or paroled in July 2002. Shortly thereafter, the government served him with a notice to appear charging him as removable on that basis. Shah then applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), seeking protection on the basis of his political opinion.

Shah, represented by counsel, appeared for his initial hearing before the IJ on March 27, 2003, and conceded removability. His merits hearing occurred on August 27, 2004. Shah testified that, in 1996, he was the secretary of propaganda of a political organization run by Nawaz Sharif called the Pakistani Muslim League. In October 1996, while Shah was running a meeting and encouraging community members to join the party, police burst in and arrested him. Shah testified that police detained him for five or six days, denied him food and water, and beat him severely with wooden sticks and rubber hoses. The police also threatened to kill him unless he left the Pakistani Muslim League. After being released, Shah was unable to move or walk for another five or six days, and had to seek medical attention for his injuries.

Shah thereafter returned to his party, which eventually came to power in Pakistan in February 1997. Shah remained active in the party and helped to organize elections. In November 1999, however, General Pervez Musharraf seized power after staging a military coup. Shah went into hiding because the military was arresting and killing members of his party, and he feared that the same would happen to him. He became a seaman, and his first voyage brought him to the United States in 2001. Instead of remaining in the country then, he returned to Pakistan because he hoped that the situation had improved. But the situation had not improved, and he sailed out again in April 2002. He arrived in the United States after jumping off a ship that was headed for Central America. His parents and brothers remain in Pakistan, and he speaks with them "once in a while." (A.R. 165.)

Shah testified to all of the above at his hearing before the IJ, and offered various articles and country reports describing conditions in Pakistan. Before rendering his decision, the IJ asked Shah if he had any evidence corroborating his membership in the Pakistani Muslim League, any evidence corroborating his receipt of medical treatment, or any letters or affidavits from other members of the party or his parents corroborating what had happened to him. (A.R. 173–75.) Shah answered that he had no corroborating evidence of his medical treatment and had not asked his parents for an affidavit, but that he had papers corroborating his membership in the party and (apparently) a letter corroborating his arrest. He testified that those

papers were at his home in Pakistan and that he had not thought it necessary to obtain them because he lacked experience in removal cases and no one had asked him for them. He also stated that he could ask his parents to send him his papers, and told the IJ "if you give me time, I will be more than happy to bring you all the paper I think you need sir." (A. 174.) The IJ, however, refused to continue the hearing and rendered his oral decision denying Shah's claims. The IJ found Shah not credible on the basis of certain perceived inconsistencies in his testimony and noted that Shah had failed to offer corroborating evidence. On those grounds, the IJ ruled that Shah had failed to carry his burden of proving his claims.

Shah appealed to the BIA. The BIA initially denied his appeal by order dated January 24, 2006. The BIA adopted the IJ's decision and noted the IJ's credibility and corroboration concerns. It did not, however, specifically discuss whether the record supported the IJ's adverse credibility determination. Shah petitioned for review in this Court (C.A. No. 06–1572). The government filed a motion to remand to the BIA for specific consideration of the credibility issue, which we granted. On remand, the BIA again denied Shah's appeal, by order dated February 28, 2007. The BIA held that the IJ's adverse credibility determination was not supported by the record. It reasoned, however, that Shah nevertheless had failed to carry his burden of proof because he had failed to provide reasonably-available corroborating evidence. Shah again petitions for review.[1]

---

1. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA disagrees with the IJ's adverse credibility determination and conducts its own corroboration analysis, we review only the BIA's decision. *See Voci v. Gonzales,* 409 F.3d 607, 612 (3d Cir.2005). Although we do not review direct-

ly the IJ's decision, we discuss such proceedings before the IJ that are relevant in reviewing the decision of the BIA. We review the BIA's factual findings for substantial evidence, but review the application of legal principles to undisputed facts of record *de novo. See Sun Wen Chen v. Att'y Gen.,* 491

## II.

Applicants for asylum, withholding of removal and relief under CAT bear the burden of proving their claims, and credible testimony alone may sometimes be sufficient to carry that burden. *See Abdulai v. Ashcroft,* 239 F.3d 542, 554 (3d Cir. 2001). Corroboration may be required, however, "in instances where it is reasonable to expect such proof from a witness and there is no satisfactory explanation for its absence." *Chen v. Gonzales,* 434 F.3d 212, 217 (3d Cir.2005). Before denying a claim for lack of corroboration, the BIA must engage in a three-part inquiry: "(1) an identification of facts for which 'it is reasonable to expect corroboration;' (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." *Abdulai,* 239 F.3d at 554.

In this case, the BIA engaged in this inquiry, but its analysis founders on the third step.[2] Shah explained that he had corroborating evidence available at his home in Pakistan but had not obtained the evidence because no one told him that it would be necessary at his merits hearing. He further offered to produce the evidence if given more time. Our review of the record reveals that the IJ never advised Shah that he would expect any particular corroborating evidence or otherwise raised the issue of corroboration before the merits hearing. We have repeatedly held that IJs should notify petitioners of what corroborating evidence they will expect. *See, e.g., Chukwu v. Att'y Gen.,* 484 F.3d 185, 192–93 (3d Cir.2007); *Toure v. Att'y Gen.,*

443 F.3d 310, 324 (3d Cir.2006); *Mulanga v. Ashcroft,* 349 F.3d 123, 136 (3d Cir. 2003). This obligation arises from an IJ's duty to develop the record. As we have explained:

> Asylum and withholding of removal cases are different from other types of cases because, while the burden of proof is borne by the applicant, the IJ and the [then-]INS have a responsibility to make sure that qualified applicants are provided refuge in accordance with the obligations imposed by international law. . . . "Justice requires that an applicant for asylum be given a meaningful opportunity to establish his or her claim."

*Mulanga,* 349 F.3d at 135 (citation omitted). Thus, the IJ should either have provided advance notice that corroboration would be expected or granted a brief continuance to allow Shah to obtain corroborating evidence.

The BIA, however, did not analyze Shah's explanation in light of these principles. Indeed, the BIA did not analyze Shah's explanation at all. The BIA's discussion of Shah's explanation reads in its entirety: "We are not persuaded by the respondent's explanation that he failed to present corroborating evidence because he was not asked to provide the evidence and was not familiar with removal proceedings." (Feb. 28, 2007 BIA Decision at 3.) The BIA did not explain why it was "not persuaded" by this explanation, and we are unable to glean its rationale. Ordinarily, we might remand for the BIA to discuss Shah's explanation in detail sufficient to permit review. *See, e.g., Miah v. Ashcroft,*

F.3d 100, 109–110 (3d Cir.2007); *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000).

**2.** We acknowledge, as the government argues, that Shah has not directly challenged the BIA's corroboration analysis in his brief. For

the reasons discussed below, however, we believe that the circumstances of this case are sufficiently compelling that we decline to deem it waived.

346 F.3d 434, 440 (3d Cir.2003). Under the circumstances, however, it is clear that, no matter what the BIA's actual rationale, its refusal to accept Shah's explanation constituted an error of law.

Shah testified that he was severely beaten and threatened with death by police because of his political affiliation, and the BIA reversed the IJ's determination that this testimony was not credible. Thus, Shah potentially falls squarely within that category of persons to whom our immigration laws are designed to afford refuge. The IJ, however, denied Shah the opportunity to present corroborating evidence that Shah testified was available to him, and the BIA denied his claim on the sole basis that he had failed to provide such evidence. The IJ denied Shah that opportunity despite the lack of prior notice that corroboration would be expected and without identifying any way in which the government might conceivably be prejudiced by a brief continuance. Under the totality of these circumstances, we believe the BIA's refusal to accept Shah's explanation for failing to corroborate denied him a reasonable opportunity to establish his claims.

Accordingly, we will grant Shah's petition for review, vacate the BIA's final order of removal, and remand this proceeding to the BIA with an instruction to remand it to the IJ. On remand, the IJ shall afford Shah a reasonable period of time (such as thirty days) in which to obtain and present whatever corroborating evidence might be available to him. Finally, the IJ shall reconsider Shah's claims in light of the BIA's reversal of his adverse credibility determination and in light of whatever corroborating evidence Shah may be able to present (or, if Shah is unable to present corroborating evidence and the IJ concludes that it is reasonable to expect such evidence, in light of Shah's explanation for his inability to present it).